UNITED STATES ex rel. JOHANSON v. PHELPS, Immigration Inspector, and three other cases.

(District Court, D. Vermont. August 16, 1926.)

1. Aliens ☞39—Execution order and rule of State Department requiring alien visitors to present passports visaed by consul held authorized and effective (Comp. St. § 7628hh).

Executive order of the President of January 12, 1925, requiring all aliens, being nonimmigrants, to present as a condition of entry into the country passports duly visaed by consular officers of the United States, and rule 42 of the Secretary of State of September 30, 1925, made pursuant to such order, instructing consuls, before issuing visitors visas, to satisfy themselves of the temporary nature of the proposed visit, held authorized by Act March 2, 1921 (Comp. St. § 7628hh), and effective, and under them the issuance of a visa by a consul is not a ministerial act, but involves discretion and his discretion cannot be controlled or reviewed by the courts.

2. Aliens ☞46—Exclusion of aliens applying for admission as visitors approved.

Action of a special board of inquiry approved in excluding aliens applying for admission as temporary visitors, on the ground that they were without passports visaed by an American consul; the consul to whom they applied having refused visas.

3. Words and phrases—"Visa."

A "visa" is recognition by country ad quem of validity of passport issued by country a quo.

Habeas Corpus. Petitions by the United States, on the separate relations of Tamara Johanson, Isabel London, Solomon Simkin, and Leontine Leskova, against Clifford D. Phelps, Immigration Inspector. Writs discharged, and relators remanded.

Hearing upon writs of habeas corpus, held at Windsor, Vt., on July 28, 1926.

Mrs. Johanson is a widow, aged 44, a citizen of Finland, and by occupation a dressmaker. She holds an unexpired Finnish passport, and arrived in Canada in June, 1926, where she has remained until now, not seeking occupation, although her means are practically nil. She declares that she has no relatives in Finland, and none in Canada; in New York is a second cousin; otherwise, so far as disclosed by the record, she is alone in the world.

Mrs. London is also a widow, aged 54,

and avers that she is a British subject, although born in Russia, and not showing naturalization. She holds an apparently unexpired British passport, under which she arrived in Canada in September, 1925, and has there remained until now. She is not engaged in any gainful occupation, but is supported by her children, six in number, ranging in age from 18 to 29, all born in England, and all now living, apparently in the same house, in New York City.

Simkin is a citizen of Finland, aged 43, a widower, with three children, who are in Finland. He holds an unexpired Finnish passport, under which he arrived in Canada in June, 1926, and has since remained there. He has not sought work in Canada, but, although by occupation a "ladies' designer," he avers a desire to come to the United States "to finish my designing business at a school there." His reserve of means for this educational project is limited to $150 owing him by a brother living (with his father and mother) in Flushing, N. Y., yet his children in Finland are daughters (the oldest 18) dependent upon him for support.

The remaining relator, Leskova, or Leszek, is a girl whose age is variously stated in the record as 16, 17, or 18. She is by birth a Pole, and apparently of Polish nationality, is possessed of an unexpired Polish passport, and under it arrived in Canada in January, 1926. Her condition as to family is extraordinary and lamentable. Her only relative disclosed by the record is a mother, now living in New York City, who testifies thus: She was married in Poland to the father of the relator, who left her behind when, before the relator was born ("seven months after our marriage"), he came to the United States. She remained in Poland until about five years ago, when she endeavored to rejoin her husband at Ithaca, N. Y. She left her daughter in Poland, and found her husband "cohabiting with another woman." She was "driven out of the house," and has not heard from her husband since, though she "presumes he is still living." Since then she has lived and is living with another man, to whom she "may be married later." There is no evidence of the financial responsibility of the mother, upon whom the daughter is dependent; nor is there any evidence of means on the daughter's part, who is described as a "domestic," but has not apparently sought occupation while in Canada.

The documents exhibited by the relators are bare of any evidence of intent on their part to use Canada merely as a corridor of entrance into the United States. All of them have applied to the United States consul general at Montreal for a visa upon their respective passports, authorizing them to enter as aliens "visiting the United States temporarily," etc. (section 3 [2] Immigration Act of 1924 [Comp. St. § 4289¾aa]), and all of them have failed to procure the same. The reasons for the consul's refusal are not always stated in the same way, in relators' petitions and their evidence before the board of special inquiry; but I think it a fair inference from all the evidence and affidavits that the consul did not regard any of them as tourists or persons intending to visit this country "temporarily for business or pleasure" (section 3 [2], supra), notwithstanding their own repeated assertions that such was their purpose.

Several of these relators have tried to enter this country before this present effort; this time they all came together, and by offering to pass the line with unvisaed passports have presented a test case. The returns to the writs show that each relator was excluded as an alien "without a passport visaed by any American consul," and Leontine Leskova was further excluded as a person likely to become a public charge.

At hearing, the returns filed in all cases but that of Mrs. London were accepted without traverse. An objection was made to the return in the London Case, in that the minutes of the board of special inquiry contained as a sort of heading or caption the phrase "Obj. Migr—Reside," which relator's counsel wished to contradict by calling relator as a witness, asserting that the minutes as written out purported to be a statement by relator that she was migrating with intent to reside in the United States. I held that the notation was no more than an indication of, at most, a finding by the board, the propriety of which (if material) would depend on the evidence; wherefore this single objection was overruled, further evidence on the point denied, and exception noted and allowed.

Francis E. Hamilton and H. Ely Goldsmith, both of New York City, for relators.

Allen Martin, Asst. U. S. Atty., of Essex Junction, Vt., opposed.

HOUGH, Circuit Judge (after stating the facts as above). The foundation stone of argument for relators is that they are not immigrants. This must be emphasized, both to do justice to the legal propositions advanced by relators' counsel, and to dissipate a certain illogicality arising from the de-

partmental decision in Re Leskova. That young woman, like all the rest, stoutly denies that she wishes to remain permanently in the United States; she is a tourist or visitor whose one purpose is to visit her mother, yet she has been excluded (inter alia) because she is likely to become a public charge. Such ground of exclusion presupposes that the applicant is an immigrant; there is no provision of law for keeping out visitors or tourists because they may become public charges while visiting. The possibility is so remote that it has not been covered by legislation.

So I disregard this finding as irrelevant to the argument, and for the further reason that, if the girl or any of the other relators is such an immigrant, he or she must be excluded under section 13 of the act of 1924 (Comp. St. § 4289¾ff), because none of them has or pretends to have an "unexpired *immigration* visa." Indeed, these cases arise under the "immigration laws" only because, by section 28 (g) of the act of 1924 (Comp. St. § 4289¾m), all laws relating to the exclusion of aliens are included under that term; for what prevented the entry of these people as visitors was and is the passport laws and regulations of this country.

[1] What is commonly known as the War or War-Time Passport Act became law May 22, 1918 (Comp. St. §§ 7628e–7628h), and beside penal provisions, now repealed, it conferred on the President power to provide how and when the movements of aliens were to be watched, permitted, or restricted. The statute does not use the word "visa," an omission in my opinion unimportant, for the function of a visa on a passport is too old and well known to need statutory definition. It is a recognition by the country ad quem of the validity of a passport issued by the country a quo, and the country of the visa may attach to it any other significance or importance deemed desirable.

The Act of March 2, 1921 (Comp. St. § 7628hh), in most general terms continued in force the provisions of the act of 1918, so far as they relate "to requiring passports and visas from aliens seeking to come to the United States." This undoubtedly continued, while specifically recognizing visas, the power of the President to apply and enforce the act as he deemed best. Then the President, by executive order dated January 12, 1925, required all aliens, being nonimmigrants, to present as a condition of entry into the country passports "duly visaed by consular officers of the United States," and further authorized the Secretary of State and the Secretary of Labor to make "additional rules and regulations not inconsistent with this order for the purpose of carrying out" the provisions of the statute and the executive order.

Subsequently, and on September 30, 1925, the Secretary of State, by rule 42, instructed consuls, before issuing visitors visas, to "satisfy" themselves of the temporary nature of the proposed visit. The subject is covered from the standpoint of the Department of Labor by supdivision H of the Immigration Rules of July 1, 1925.

While antedating these particular regulations or orders, the Chryssikos Case (C. C. A.) 3 F.(2d) 372, shows that, when a consul had issued a visitor's visa, exclusion by the Department of Labor, on the ground that the alien was not a bona fide visitor, was still possible, though difficult. That the act of 1921 continued (semble) all but the penal provisions of the act of 1918 is, I think, held by Flora v. Rustad (C. C. A.) 8 F.(2d) 335, and Koyama v. Burnett (C. C. A.) 8 F.(2d) 940, and to the same effect is the opinion of the Attorney General dated March 30, 1921.

[2] From this statement it is, I think, evident that the inspector at St. Albans did the only thing he could do under the regulation, and the return, in stating that none of the relators had a passport visaed by an American consul, forecloses all discussion, except of the possible invalidity of the rules under which the inspector was bound to act. On this point it is urged, first, that there is no law requiring visas on visitors' passports. This is equivalent to saying that the President had no lawful right to make the order of January 12, 1925. To this I cannot agree, believing that the power was specifically continued in him by the act of 1921.

Second, it is further said that, even if visas are required, it is merely a "ministerial" act to affix them; the consul is bound (semble) to visa any passport presented by one who says he is a visitor only; and, if he refuses, "equity should consider as done that which ought to be done" and treat as visaed the passports presented by these relators. This argument, of course, involves the nullification of rule 42 of the Secretary of State.

The core of this argument is that the consul in Montreal has no right to satisfy himself that these relators are real visitors, and the Secretary of State had no right to instruct him so to do. Having regard to the nature of consular action as to passports, and general knowledge of history, I should

not agree; but, when the immigration laws are considered, many reasons appear for upholding the power of consuls in the premises.

Visas have become, in the latest laws about immigration, words of art. In the act of 1924, section 2 (f), being Comp. St. § 4289¾a, requires an "immigration visa," and section 7 (Comp. St. § 4289¾cc) elaborates the requirement, while section 13 excludes an immigrant without one, and section 2 (f) distinctly imposes on the issuing consul the duty of investigation and decision. There can be no reason for one rule as to an immigrant's visa, and another as to a tourist's visa. If in the first case the consul must refuse action if he "has reason to believe" the would-be imigrant inadmissible, there is every reason why he should act similarly if he has reason to believe that the pretended visitor is not within the true meaning of section 3 (2) of the act.

Result is that I hold: (1) The President's order of 1925 is a lawful exercise of authority; and (2) so is the Secretary of State's instruction to consuls; (3) historically, the affixing of a visa to a passport is not a ministerial act, but one in which the visa-giving officer represents his country, and is authorized to safeguard that country's interests to the best of his discretion and ability; and (4) the action of the consul at Montreal in cases such as these was strictly warranted by law, irrespective of history or tradition.

Finally, it is held that, though I agree that the consul at Montreal might well have inferred from the facts testified to that none of these relators was a bona fide tourist or visitor, this court has no jurisdiction to disregard his action, even if it did not agree on the question of facts; but under the Chryssikos Case, supra, the board of special inquiry might have discovered facts unknown to the consul and excluded the aliens, even if they had visas. As nothing of the sort happened, however, the action of the board is sustained for the reason stated in the returns.

In each case, writ discharged, and relator remanded.