## UNITED STATES v. MOUYAS et al.

District Court, S. D. New York.

June 24, 1930.

Charles H. Tuttle, U. S. Atty., of New York City (Frank P. Catinella, of New York City, of counsel), for the United States.

J. Harold Van Riper, of New York City, for defendant.

CAFFEY, District Judge.

The defendants are Greeks and are not related. In their native country they purchased what purported to be birth certificates and a passport. The birth certificates recited that they were brothers, named Nicholas and Bill Yacovatos, born at Reading, Pa. The passport was dated July 5, 1929. On its face it appeared to have been issued by the American consulate at Athens to one of the brothers, accompanied by the other. It bears photographs of both defendants and was stamped with several visas. One visa, dated

April 19, 1930, is in the name of the American consul at Cherbourg. Defendants arrived at the port of New York April 24, 1930, on the Mauretania. In seeking entry, they exhibited the passport, together with the birth certificates, and represented themselves to be the Yacovatos brothers.

The indictments allege that the defendants, when applying for admission to the United States, personated others, to wit, the one, Bill Yacovatos, and the other, Nic Yacovatos; also that, for the purpose, they presented the above-described passport and each represented himself to be Nic or Bill Yacovatos, respectively.

Defendants argue that there was no violation of the Immigration Act of 1924. In support of the contention they assign two grounds: (a) There is no showing that the individuals mentioned in the passport actually existed; (b) the offense denounced in the law relates only to visas and permits required particularly for aliens.

■ Section 22(b) of the statute (8 USCA § 220(b); 43 Stat. 165) provides that "any individual who (1) when applying * * * for admission to the United States, personates another," is guilty of a crime.

There can be no doubt that the indictments state an offense. It is enough to follow the language of the clause quoted. That has been done. Defendants therefore are driven to say that the proof is insufficient.

■ The first insistence, that the government must fail unless it present evidence that Nicholas and Bill Yacovatos were real human beings, rests upon the assumption that "personate" means only to assume to be an identified person. The truth is, however, as the dictionaries say (e. g., Century, Standard, and Webster), that impersonation may consist of playing a fictitious character. In Lane v. United States (C. C. A.) 17 F.(2d) 923, at page 924, it is said that, "Personate ordinarily means to pass one's self off as, to play the part or assume the character of, another."

One may personate another just as effectually by representing himself to be a figure created by his own imagination as by representing himself to be a specific individual who later appears in the witness box and expressly repudiates the impostor. If it were otherwise, the door to the successful commission of fraud would be left wide open. The simple device of selecting as the subject of impersonation some one known to be inaccessible at the scene of action would enable every crook to go unwhipped of justice

through inability of the government to produce him or make proof concerning him. Bearing in mind that the object of the provision of law must be considered, it would be little short of absurdity to attribute to Congress the intention that no alien, from however remote a part of the earth he came, shall be convicted of impersonation unless, by witnesses confronting the accused at the trial, it be established that the false name in which entry was sought was borne in fact by another.

Manifestly, the essence of the offense is misrepresentation by the alien. Here such misrepresentation is concededly established, in exact accord with the allegation of the indictments.

Defendants next frankly rely exclusively on McFarland v. United States, 19 F.(2d) 807 (C. C. A. 6). Is the decision right? If so, does it apply on the facts of the case at bar?

■ The McFarland indictment was indisputably defective. It did not charge that the defendant was seeking admission to the United States. The result therefore was correct. But, though I have great respect for the learned judge who wrote the opinion, I think he is entirely wrong in stating that the statute includes only the use, for effecting impersonation, of a visa or a permit prescribed thereby for aliens. This seems to me too narrow a view. The language is plain and the courts should not decline to give it full force. Caminetti v. United States, 242 U. S. 470, 485, 486, 37 S. Ct. 192, 61 L. Ed. 442, L. R. A. 1917F, 502, Ann. Cas. 1917B, 1168.

The words are sweeping. They apply to "any individual," whether an alien or a native. They confine the occasion to seeking "admission" to the country. But any one who, on that occasion, "personates another" is made a criminal. What avenue of escape is there from these plain words?

The section in question is in a part of the law which bears the subtitle "offenses in connection with documents." It is accordingly asserted that the language should be restricted to the two classes of instruments which the statute, of which the section is a part, especially deals with, namely, visas and permits. If this interpretation were adopted, it would give a significance to a title which has been repeatedly and uniformly denied to it. Hadden v. Collector, 5 Wall. 107, 110, 18 L. Ed. 518; Patterson v. Bark Eudora, 190 U. S. 169, 172–173, 23 S. Ct. 821, 47 L. Ed. 1002; Cornell v. Coyne, 192 U. S. 418, 430, 24 S. Ct. 383, 48 L. Ed. 504. It is only when

the body of the act is ambiguous that the title may be resorted to as an aid in ascertaining the meaning. Even then, it is given little weight. When, as here, the language is plain, it must be accepted; it must govern, regardless of the title.

Moreover, even if we were to attribute to the heading preceding the section the design to restrain what follows to "documents" only, there is no warrant for excluding passports from that category. Passports, and indeed birth certificates also, were in the minds of the legislators. The one is mentioned in section 2(d) and the other in section 7(c) of the act (8 USCA §§ 202(d) and 207(c)). When therefore "offenses in connection with documents". were taken up, why should these apply only to visas and permits? Those constitute a portion only of the "documents" mentioned in the statute. Why should not passports be included? So narrow an interpretation as that sought by defendants would tend to frustrate the purpose of the law. That purpose was to penalize obtaining or efforts to obtain entrance into the country by personating others. As is well known, passports are a usual and permissible type of document for presentation at the time of seeking admission. They are frequently employed by both foreigners and Americans. If therefore the means by which false impersonation occurs be a passport, why should the one who uses it be freed from prosecution? It seems to me too plain for further argument that the proof in the instant case fully establishes the charge.

The government has made known to the court, and the hearing before the Board of Special Inquiry tends to show, that in Greece there exists a vicious and widespread scheme to get aliens into this country by false papers. On that account I feel that drastic punishment should be administered to those caught in the practice. The guilt of the defendants being clear, and the meaning of the statute being clear, I deny bail pending appeal.