**UNITED STATES of America**

v.

**Alvaro Poveda VARGAS, Defendant.**

**No. 73 CR 258.**

United States District Court,
E. D. New York.

June 28, 1974.

David G. Trager, U. S. Atty., E.D.N. Y., by Gavin W. Scotti, Asst. U. S. Atty., Brooklyn, N. Y., for plaintiff.

The Legal Aid Society, by Edward J. Kelly, Brooklyn, N. Y., for defendant.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Defendant has moved to dismiss an indictment charging him with possessing and uttering a document required for entry into the United States, knowing the same to have been procured by fraud and unlawfully obtained in violation of 18 U.S.C. § 1546 (1970). Defendant's motion principally focuses on the fact that the document in question is a Colombian passport. Whether a foreign passport is a "document required for entry into the United States" within the meaning of § 1546 appears to be a question of first impression, the determination of which may be made without a trial of the general issue.

For purposes of this motion, the parties have stipulated to the following facts:

On or about February 15, 1973, defendant sold a Colombian passport to one Sanchez, an undercover agent of the United States Bureau of Customs. Defendant was then employed as a porter/clerk in the New York City office of the Consul General of Colombia. The passport in the name of one Jhon Jairo Valdes Nunez had been turned over to the consulate on July 6, 1971 by a woman whose son had found it in a subway. Apparently the passport had been lost and never reclaimed. It had been issued on March 25, 1970, and while it was still in force, its initial validation had expired on March 25, 1972 and had not been revalidated.[1] Defendant at the time of the sale was not authorized by his superior to sell the pass-

---

1. From the date of its issuance, a Colombian passport is in force for seven years or until its pages are totally used, whichever is earlier. It is initially valid for two years and can be revalidated for two up to five periods of one year. Revalidation is accomplished by personally presenting the passport and a five-dollar fee at any Colombian consulate. No other document is required.

port, and the sale was a violation of the laws, regulations or procedures controlling the operations of the consulate and the duties of employees.

The first paragraph of § 1546, upon which the indictment is found, reads as follows

"Whoever, knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, or other document required for entry into the United States, or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, or document, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained

\* \* \* \* \* \*

"Shall be fined . . . or imprisoned . . . ."

In defending the indictment and opposing the motion to dismiss, the government takes the position that the phrase "other document required for en-try into the United States" comprehends a Colombian passport. It relies heavily on 8 C.F.R. § 212.1 (1973), which provides in pertinent part that "an unexpired passport . . . shall be presented by each arriving nonimmigrant alien . . . ." [2] The government further argues that the purpose of the statute warrants its application to the circumstances of this case.

The history of § 1546, the terms of the statute itself, the language of other sections of the Immigration and Nationality Act of 1952 which amended it, as well as the provisions of other sections of 18 U.S.C. which were enacted together with it, convince the court that the phrase in question is limited to documents which are exclusively entry documents issued by the United States.

### 1. History of § 1546

The offenses proscribed in § 1546 originated in § 22 of the Immigration Act of 1924, Ch. 190, 43 Stat. 165.[3] The offenses specified in § 22 related to "immigration visa or permit." The term "immigration visa" was defined in the

---

2. The regulation contains a number of exceptions to its terms not here relevant.

The regulation also provides that the passport must be valid for the period set forth in § 212(a)(26) of the Immigration and Nationality Act. See n. 7 *infra* and accompanying text.

In addition to maintaining that a Colombian passport is not a "document required for entry into the United States," defendant argues that on the basis of the stipulated facts, see n. 1 *supra* and accompanying text, the expired Colombian passport could not be such a document in any event. The court does not find it necessary to pass on this contention in view of its decision on the question of law.

3. Section 22 provided in pertinent part:

"(a) Any person who knowingly (1) forges, counterfeits, alters, or falsely makes any immigration visa or permit, or (2) utters, uses, attempts to use, possesses, obtains, accepts, or receives any immigration visa or permit, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained; or who, except under direction of the Secretary of Labor or other proper officer, knowingly (3) possesses any blank permit, (4) engraves, sells, brings into the United States, or has in his control or possession any plate in the likeness of a plate designed for the printing of permits, (5) makes any print, photograph, or impression in the likeness of any immigration visa or permit, or (6) has in his possession a distinctive paper which has been adopted by the Secretary of Labor for the printing of immigration visas or permits, shall, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both.

"(b) Any individual who (1) when applying for an immigration visa or permit, or for admission to the United States, personates another, or falsely appears in the name of a deceased individual, or evades or attempts to evade the immigration laws by appearing under an assumed or fictitious name, or (2) sells or otherwise disposes of, or offers to sell or otherwise dispose of, or utters, an immigration visa or permit, to any person not authorized by law to receive such document, shall, upon conviction thereof, be fined not more than $10,000, or imprisoned for not more than five years, or both."

1924 Act as "an immigration visa issued by a consular officer under the provisions of [the] Act." § 28(d), 43 Stat. 168. The term "permit" was defined "as a permit issued under section 10 [of the Act]."[4] § 28(k), 43 Stat. 169. This provision was codified in 8 U.S.C. § 220 (1940). In 1948 it was transferred to 18 U.S.C. § 1546 as part of the general recodification of Title 18. That section, entitled "Fraud and misuse of visas and permits," continued to be concerned with offenses related to an "immigration visa or permit," ch. 645, 62 Stat. 771. There was no change suggesting that the documents involved comprehended any that were not issued by appropriate officers of the United States.

In 1952, § 1546 was amended by § 402(a) of the Immigration and Nationality Act of 1952, ch. 477, Title IV, 66 Stat. 275. As amended, the statute is captioned "Fraud and misuse of visas, permits, and other entry documents," and by its terms is related to "any immigrant or nonimmigrant visa, permit, or other document required for entry into the United States." The addition of the word "nonimmigrant" apparently reflects the fact that the 1952 Act in § 221 and § 222, 66 Stat. 191–194, 8 U.S.C. §§ 1201 and 1202, made for the first time "statutory provision . . . for the issuance of nonimmigrant visas." H.R.Rep.No.1365, 1952, U.S.Code Cong. & Admin.News, p. 1708.

As defined in the 1952 Act, an "immigrant visa" means "an immigrant visa required by [the] Act and properly issued by a consular officer at his office outside of the United States to an eligible immigrant. . . .", § 101(a)(16), 66 Stat. 169, 8 U.S.C. § 1101(a)(16). A "nonimmigrant visa" means "a visa properly issued to an alien as an eligible nonimmigrant by a competent officer as provided in [the] Act." § 101(a)(26), 66 Stat. 169, 8 U.S.C. § 1101(a)(26). In each case, it is clear that the "officer" referred to is an officer of the United States. While the legislative history of the 1952 Act does not make clear which "other" entry documents the Congress had in mind, it seems most likely that the additional language in § 1546 was to reach specialized border-crossing identification cards, authorized as a substitute for a visa or permit in the Alien Registration Act of 1940. United States v. Campos–Serrano, 404 U.S. 293, 296–297 n. 6, 92 S.Ct. 471, 473 n. 6, 30 L.Ed. 2d 457 (1971).

In sum, until 1952 the statute and its predecessor dealt solely with immigrant visas and permits, which by definition were documents issued by the United States. There is no indication that the amendment of the statute in 1952 was designed to reach anything except documents equivalent to visas and permits also issued by officers of the United States.

2. *The Statute Viewed as a Whole*

 Section 1546 contains four paragraphs delineating criminal offenses. While the indictment is framed under the first paragraph, the phrase in controversy appears in the succeeding two paragraphs as well.

The second paragraph of the statute is directed against anyone who improperly

"possesses any blank permit, or engraves, sells, brings into the United States, or has in his control or possession any plate in the likeness of a plate designed for the printing of permits, or makes any print, photograph, or impression in the likeness of *any immigrant or nonimmigrant visa, permit or other document required for entry into the United States,* or has in

4. Under § 10, entitled "Permit to Reenter United States After Temporary Absence," any alien about to depart temporarily from the United States could "make application to the Commissioner General for a permit to reenter the United States," and the Commissioner, if he found that the alien had been legally admitted to the United States and that the application was made in good faith, was to issue the permit with the approval of the Secretary of Labor. 43 Stat. 158.

his possession a distinctive paper which has been adopted by the Attorney General or the Commissioner of the Immigration and Naturalization Service *for the printing of such visas, permits, or documents;*" (emphasis supplied).

It is clear that in this paragraph Congress was concerned solely with the integrity of United States entry documents, for the printing of which a distinctive paper might be adopted. It is a settled principle of statutory construction that when the same word or phrase is used in the same section of an act more than once, and the meaning is clear in one place, it will be construed to have the same meaning in the other places. Meyer v. United States, 175 F. 2d 45, 47 (2 Cir. 1949). This reinforces the view that the "other" documents referred to in the first and third paragraphs of § 1546, like those in the second, are entry documents issued by the United States.

Additionally, the language of the fourth paragraph of § 1546 demonstrates that Congress well knew how to expand the scope of a criminal prohibition by appropriate phraseology.[5] In that paragraph the term "other document" is immediately followed by the words "required by the immigration laws or regulations prescribed thereunder," rather than "required for entry into the United States." The expansive wording of the fourth paragraph thus negates the notion that "other document" as used in the preceding three paragraphs should receive the same broad construction.

3. *Immigration and Nationality Act of 1952*

 The meaning of a term in one section of an act may often be clarified

by reference to its use in others. United States v. Cooper Corp., 312 U.S. 600, 606, 61 S.Ct. 742, 85 L.Ed. 1071 (1941). As noted above, § 1546 reflects on its face a significant difference in the description of the documents embraced within its first and fourth paragraphs. Similar differences are apparent in the Immigration and Nationality Act of 1952, which amended § 1546.

At least three categories of "required documents" can be discerned in the 1952 Act:

(1) documents required in order to apply for an entry document. *See, e. g.,* 8 U.S.C. § 1202;

(2) documents required for actual admission or entry into the United States. *See, e.g.,* 8 U.S.C. §§ 1184, 1182(a)(26);

(3) documents issued by the United States for entry into the United States. *See, e. g.,* 8 U.S.C. § 1201.

Thus a distinction appears manifest between documents required for application and admission by United States immigration laws or implementing regulations and the entry documents themselves. With respect to § 1546, a passport, which may be the former, is not necessarily the latter. In 8 U.S.C. § 1182(a)(20), for example, Congress explicitly recognized such a distinction when it authorized exclusion of

". . . any immigrant who at the time of application for admission is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, *or other valid entry document* required by this chapter, and a valid unexpired passport, *or other suitable travel document, or document of identity and nationality,* if such document is required under the regulations issued by the Attorney General pursuant to section

---

5. The fourth paragraph of § 1546 states:

"Whoever knowingly makes under oath any false statement with respect to a material fact in any application, affidavit, *or other document required by the immigration laws or regulations prescribed there-* *under,* or knowingly presents any such application, affidavit, or other document containing any such false statement—

"Shall be fined . . . or imprisoned . . . ." (Emphasis supplied.)

1181(a) of this title . . ." (emphasis supplied).

The foregoing makes clear that a passport is characterized as a "travel document, or document of identity and nationality." *See also* 8 U.S.C. § 1202(b).

██ Consequently, little weight can be given to the bare assertion by the government that a foreign passport is a "document required for entry into the United States" simply because under 8 C.F.R. § 212.1 presentation of a passport is necessary for admission of an alien into the United States. Although Congress unquestionably may validly provide a criminal sanction for violation of rules or regulations which it has empowered the President or an administrative agency to enact, United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L. Ed. 563 (1911), there is no basis for believing that § 1546 authorizes any definitional implementation of the phrase in question by regulation, or by 8 C.F.R. § 212.1 in particular.[6] Nor does it appear that the regulation relied upon was intended to implement the criminal statute. *Compare, e. g.*, Brumage v. United States, 377 F.Supp. 144 (E.D.N.Y.1974). In fact, 8 C.F.R. § 212.1 appears to be no more than an expression in regulation form of § 212(a)(26) of the Immigration and Nationality Act of 1952, 8 U.S.C. § 1182(a)(26), to which it makes specific reference.[7]

### 4. *Related Sections of 18 U.S.C.*

Chapter 75 of Title 18 of the United States Code, §§ 1541–1546, provides criminal penalties for offenses related to passports and visas. The first four provisions §§ 1541–1544, are concerned exclusively with passports. Section 1544 deals with safe conducts as well as passports. The government insists that since these statutes apply to United States passports, § 1546 must apply to foreign passports.

Such a contention is a *non sequitur*. Although the inclusion of at least five criminal statutes related to passports does not preclude the first paragraph of § 1546 from applying to passports, it renders it unlikely that that paragraph was intended to cover passports at all. Furthermore, that the preceding statutes relate to United States documents,[8]

---

6. While § 1546 nowhere provides sanctions for violation of rules of regulations, *per se*, it does include in its fourth paragraph as an offense the making under oath of any false statement with respect to a material fact in any application affidavit, or other document required by the immigration laws or regulations prescribed thereunder. See n. 5 *supra*. This is not the offense charged in the instant indictment. The failure by Congress to similarly authorize a definition by regulation in the first paragraph of § 1546 strongly suggests that no such authorization was intended.

7. The provisions in Part 212 of 8 C.F.R. are issued under the authority of ten provisions of 8 U.S.C., §§ 1101, 1103, 1182, 1184, 1225, 1226, 1228, 1252, 1182b, 1182c. Only four of these have any relation to 8 C.F.R. § 212.1. Definitions are contained in 8 U.S.C. § 1101. Under 8 U.S.C. § 1103 the Attorney General is charged with the administration and enforcement of the chapter, and under 8 U.S.C. § 1184(a), the admission to the United States of any alien as a nonimmigrant shall be for such time and under such

conditions as the Attorney General may by regulations prescribe. Finally, 8 U.S.C. § 1182 lists the general classes of excludable aliens including in § 1182(a)(26)

"[a]ny nonimmigrant who is not in possession of (A) a passport valid for a minimum period of six months from the date of the expiration of the initial period of his admission or contemplated initial period of stay authorizing him to return to the country from which he came or to proceed to and enter some other country during such period; and (B) at the time of application for admission a valid nonimmigrant visa or border crossing identification card;"

8. Section 1541 penalizes the issuance without authority of a passport or similar instrument by anyone "acting or claiming to act in any office or capacity under the United States, or a State or possession . . . ." Section 1542, punishing any false statement in an application for a passport and use of a passport secured as a result, requires "intent to induce or secure the issuance of a passport under the authority of the United

and that the visas and permits referred to in § 1546 are United States documents, also make it most unlikely that "other document required for entry into the United States" was intended to embrace foreign documents.

Turning now to the government's policy argument that the very purpose of the statute is to punish the kind of act committed by the defendant, the court is cited to United States v. Mouyas, 42 F. 2d 743 (S.D.N.Y.1930).

Essentially the government appears to argue that in order to protect the United States from the improper entry of aliens, § 1546 should be held applicable to a situation where a foreign passport is improperly transferred under circumstances suggestive of an intent that it would be utilized to obtain or regain entry into the United States. In support of this view, it relies upon United States v. Mouyas, *supra*, in which two defendants were charged under § 22 of the Immigration Act of 1924, the predecessor of § 1546, with impersonating others through the use of a joint passport and birth certificates. The court rejected defendants' contention that since the section related specifically to visas and permits, it did not include passports.

Relying on the fact that § 22 was a part of the law bearing the subtitle "offenses in connection with documents," the court in *Mouyas* concluded that a narrow interpretation would "tend to frustrate the purpose of the law," which "was to penalize obtaining or efforts to obtain entrance into the country by personating others." 42 F.2d at 745. Since a passport was "a usual and per-

missible type of document for presentation at the time of seeking admission," the court asked, "If therefore the means by which false impersonation occurs be a passport, why should the one who uses it be freed from prosecution?" *Id.*

[6] Thirty years later the Supreme Court rejected a similar contention in United States v. Campos-Serrano, *supra,* holding that possession of a counterfeit alien registration receipt card was not punishable under § 1546.[9] The Court refused to hold that a card, which could under regulation be used for re-entry purposes in lieu of a visa or re-entry permit, was a document *required* for entry into the country. As it noted (404 U.S. at 299, 92 S.Ct. at 475):

> The language of § 1546 denotes a very special class of "entry" documents— documents whose primary *raison d'etre* is the facilitation of entry into the country. The phrase "required for entry into the United States," is descriptive of the nature of the documents; it is not simply an open-ended reference to future administrative regulations.

While a foreign passport is required of aliens to obtain entry into the United States, and, unlike an alien registration card, is not merely a permissible means of entry, it is clear that the primary *raison d'etre* of a foreign passport is not facilitation of entry into the United States. A foreign passport, unlike a visa or permit, cannot generally be defined as a document required for entry into the United States. Indeed, a visa was traditionally affixed to a passport itself.[10] It continues to be defined as

States . . . ." Section 1545 speaks of "safe conduct or passport duly obtained and issued under the authority of the United States . . . ." It is the government's position that § 1543 and § 1544 similarly apply to United States passports. Government's Memorandum of Law, p. 11.

9. In any event, it should be noted that *Mouyas* involved a United States passport issued by the American Consulate at Athens. 42 F.2d at 743. Even assuming that the 1952 amendment *to* § 1546, adding "other docu-

ments," might have indirectly validated the 1930 *Mouyas* ruling, that decision cannot control here. Whether or not § 1546 reaches United States passports, it is clear that the statute does not reach foreign passports.

10. "[T]he function of a visa on a passport is too old and well known to need statutory definition. It is a recognition by the country ad quem of the validity of a passport issued by the country a quo . . . ." United States v. Phelps, 14 F.2d 679, 681 (D. Vt.1926).

"an endorsement made on a passport by the proper authorities (as of the country the bearer wishes to enter) denoting that it has been examined and that the bearer is permitted to proceed." Webster's Third International Dictionary (1971).

As the Supreme Court emphasized in *Campos-Serrano*, a penal statute is to be strictly construed. 404 U.S. at 297, 92 S.Ct. at 474. At the same time, a court must not do violence to the Congressional intent underlying the statute. *Id.* at 298, 92 S.Ct. 471 at 474. While the court could easily posit reasons for which Congress might have wished to include foreign passports within the meaning of "document required for entry into the United States," there is no indication that Congress wished to do so.

Construing this phrase in § 1546 as limited to United States documents of entry would not defeat the purpose of the statute. Even with a fraudulent passport, an alien would be required to obtain a visa or permit to enter the United States.[11] If he used that passport in an attempt to obtain a visa or permit, he would violate § 1546. If he improperly transferred such a passport with intent that it be utilized by another to obtain a visa or permit, he might be punishable under 18 U.S.C. § 371 for conspiring to violate § 1546, or under § 2 for aiding any violation committed.

In short, absent an expression of Congressional intent to create substantive offenses related to documents issued by foreign nations, and with strong indications to the contrary, the court cannot read the first paragraph of § 1546 as applicable to foreign passports. Nor can it stretch a penal statute to cover merely evil intent.

Accordingly, defendant's motion to dismiss this indictment as a matter of law is granted.

So ordered.

---

11. *See, e. g.*, 8 U.S.C. §§ 1181, 1182(a).(26).