**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Somboon DANGDEE,**
**Defendant-Appellant.**

**No. 79–1501.**

United States Court of Appeals,
Ninth Circuit.

April 7, 1980.

Joe Reichman, Los Angeles, Cal., for defendant-appellant.

Andrea Sheridan Ordin, Los Angeles, Cal., for plaintiff-appellee.

Before KENNEDY and FLETCHER, Circuit Judges, and POOLE,* District Judge.

FLETCHER, Circuit Judge:

On March 9, 1979, immigration officials arrested Somboon Dangdee at the Los Angeles International Airport when they discovered that he was using an altered passport to gain entry into the United States. The passport was originally issued by the government of Thailand. Dangdee was subsequently convicted of violating 18 U.S.C. § 1543 (1976), which makes unlawful the alteration of "any passport" and the knowing and willful use of an altered passport.[1]

■ Dangdee concedes in this appeal that he knowingly used an altered Thai passport. He challenges his conviction on the ground that section 1543 applies only to passports issued by the United States and not to passports issued by foreign governments. The question is one of first impression. We find that section 1543 applies to passports issued by foreign governments and so affirm.

■ The language of criminal statutes must be strictly construed, but should be accorded its plain meaning when it is unambiguous. *United States v. Gomez-Tostado*, 597 F.2d 170, 172 (9th Cir. 1979). *See also Church of Scientology v. United States Department of Justice*, 612 F.2d 417, 421 (9th Cir. 1979); *United States v. Rone*, 598 F.2d 564, 569 (9th Cir. 1979). The statutory language usually is the best evidence of congressional intent because "we must assume that Congress meant what it said." *United States v. Jones*, 607 F.2d 269, 273 (9th Cir. 1979).

The language of section 1543, "any passport," fairly and logically encompasses foreign as well as United States passports. A more restrictive interpretation of this language is unwarranted because the statute is devoid of any qualifying language. *See United States v. Wilson*, 591 F.2d 546, 547 (9th Cir. 1979) ("any official" could not be restricted to "any federal official" where Congress left the statutory language unqualified).

■ Chapter 75 of title 18 of the United States Code, of which section 1543 is a part, establishes criminal penalties for various acts involving passports and other travel documents. Several sections in chapter 75 indicate that Congress knows how to restrict the statutory language to reach only passports issued by the United States: section 1541 proscribes the unauthorized issuance of passports by one "acting or claiming to act in any office or capacity under the United States, or a state or possession"; section 1542 penalizes the making of false statements with the intent to induce the issuance of "a passport under the authority of the United States"; and section 1545 proscribes the violation of any safe conduct or passport "duly obtained and issued under authority of the United States." In contrast, section 1543 penalizes the alteration of "any passport" and the use of an altered passport; section 1544 proscribes the misuse of "any passport."[2] The absence of quali-

---

* The Honorable Cecil F. Poole, United States District Judge for the Northern District of California, sitting by designation.

1. 18 U.S.C. § 1543 provides:

   Whoever falsely makes, forges, counterfeits, mutilates, or alters any passport or instrument purporting to be a passport, with intent that the same may be used; or

   Whoever willfully and knowingly uses, or attempts to use, or furnishes to another for use any such false, forged, counterfeited, mutilated, or altered passport or instrument purporting to be a passport, or any passport validly issued which has become void by the occurrence of any condition therein prescribed invalidating the same—

   Shall be fined not more than $2,000 or imprisoned not more than five years, or both.

2. Section 1546, which makes it an offense to forge, counterfeit, alter or falsely make any "immigrant or nonimmigrant visa, permit or other document required for entry into the United States," completes chapter 75 of title 18.

   Section 1546 also concerns passports, to the extent "other documents of entry" can be interpreted to encompass passports, *see United States v. Restrepo-Granda*, 575 F.2d 524 (5th Cir.), *cert. denied*, 439 U.S. 935, 99 S.Ct. 331, 58

fying language in section 1543, in light of the more restrictive language of other sections in chapter 75, implies that Congress meant section 1543 to have broad application.

This reading comports with the original function of section 1543 which was enacted as part of title IX of the Espionage Act of 1917, chapter 30, 40 Stat. 217. The Espionage Act embraced a wide range of national security concerns. It contained criminal provisions concerning acts of espionage, interference with American shipping, and exportation of military supplies. It regulated activities of vessels in United States ports, allowed the President to enforce neutrality by, among other things, detaining armed vessels owned by foreigners, and authorized the issuance of search warrants. It made criminal the act of impersonating a diplomatic official of a foreign government or of acting as the agent of a foreign government without prior notification to the Secretary of State. Title IX, which concerned passports, set forth the requirements for applying for a United States passport, provided punishment for making false statements in conjunction with such an application, made criminal the act of using "any passport" issued to another, and proscribed the counterfeiting or forgery of "any passport."

The Espionage Act reflects congressional concern with controlling the activities of both United States citizens and foreign agents as they affect national security. Accordingly, Congress intended title IX to regulate the entry of foreign citizens into the United States as well as to control travel of United States citizens abroad. Assuring the genuineness of foreign passports used to gain entry into the United States is consonant with this purpose.

We conclude section 1543 comprehends the alteration of a foreign passport.

AFFIRMED.

L.Ed.2d 332 (1978); *United States v. Vargas,* 380 F.Supp. 1162 (E.D.N.Y.1974); [1952] U.S. Code Cong. & Admin.Service 1653, but it sheds little light on the interpretation of section 1543. First, it is difficult to compare the two sections, because their references to passports are dissimilar. Second, the two sections originated in different statutes. While section 1543 originated in the Espionage Act of 1917, chapter 30, 40 Stat. 217, section 1546 had its genesis in section 22 of the Immigration Act of 1924, chapter 190, 43 Stat. 165, as amended by section 402(a) of the Immigration and Nationality Act of 1952, chapter 477, title IX, 66 Stat. 275.