UNITED STATES of America, Plaintiff-Appellee,

v.

Edward OSIEMI, a/k/a "Eddie Banjo Mokhede" Defendant-Appellant.

No. 91-3818.

United States Court of Appeals, Fifth Circuit.

Jan. 5, 1993.

Edward Omeoekede Osiemi, pro se.

Peter G. Strasser, Brian A. Jackson, Harry Rosenberg, U.S. Atty., New Orleans, La., for U.S.

Before REYNALDO G. GARZA, GARWOOD, Circuit Judges, and WERLEIN *, District Judge.

WERLEIN, District Judge:

Appellant Edward Osiemi ("Osiemi") a/k/a Eddie Banjo Mokhede pleaded guilty to possession of a counterfeit passport in violation of 18 U.S.C. § 1546(a), and was later sentenced. He did not file a direct appeal. Subsequently, Osiemi filed a motion to vacate his sentence under Title 28 U.S.C. § 2255, which was denied by the district court.

The principal question on this appeal is whether possession of a counterfeit or altered passport issued by a foreign government is an offense proscribed by § 1546(a). We hold that it is.

*Facts and Proceedings in District Court*

Osiemi, a Nigerian, was indicted for possession of a document prescribed by statute for entry into the United States, to wit, a passport, knowing the same to have been counterfeited and altered, in violation of Title 18 U.S.C. § 1546(a). Pursuant to a plea agreement, Osiemi entered a plea of guilty and subsequently was sentenced to a term of imprisonment of four months, a term of three years' supervised release, a fine of $1000, and a special condition that, if deported, Osiemi would not illegally reenter the United States.

The Nigerian passport in Osiemi's possession bore the name "Eddie Banjo Mokhede" instead of Edward Osiemi. Osiemi contends that because the passport was not issued by the United States and/or because it did not contain a United States entry visa, no offense was committed under 18 U.S.C. § 1546(a). Osiemi also contends that his guilty plea was not voluntarily made with an understanding of the nature of the charge and the consequences of the plea.

*Discussion*

■ The government contends that Osiemi either should have filed a Motion to Dismiss the Indictment or taken a direct appeal in order to assert his claim that the indictment charged no offense, and that Osiemi's failure to raise such challenges earlier prohibits this court from considering the merits of his claim. We reject the government's contention. A claim that an indictment fails to state an offense is a challenge to the jurisdiction of the convicting court and is not waived by a guilty plea. *United States v. Rivera*, 879 F.2d 1247, 1251, n. 3 (5th Cir.), *cert. denied*, 493 U.S. 998, 110 S.Ct. 554, 107 L.Ed.2d 550 (1989). Moreover, such a challenge may be raised for the first time in a § 2255 petition because such an error divests the sentencing court of jurisdiction. *United States v. Harper*, 901 F.2d 471, 472 (5th Cir.), *reh'g. denied, en banc* 907 F.2d 146 (1990). We therefore turn to the merits of Osiemi's claim.

■ Osiemi's argument that § 1546(a) does not proscribe the knowing possession of a foreign counterfeit passport is based principally upon several decisions predating

---

* District Judge of the Southern District of Texas, sitting by designation.

a 1986 amendment of the statute.[1] Before the 1986 amendment, the statute proscribed possession of any visa, permit, or other document *"required"* for entry into the United States.[2] By deleting the word "required" and by adding the words, "prescribed by statute or regulation," Congress expanded the proscription of the statute from being limited to *required* entry documents to *any* documents *prescribed either by statute or by regulation* for entry into the United States.

Thus, the Court must decide if a foreign passport is a document "prescribed by statute or regulation" for entry into the United States within the meaning of § 1546(a). Title 8 U.S.C. § 1181, entitled "Admission of Immigrants into the United States," lists the "documents required" of an immigrant in subsection (a). The pertinent portion of that statute reads:

> Except as provided in subsection (b) and subsection (c) of this section no immigrant shall be admitted to the United States unless at the time of application for admission he (1) ... and (2) presents a valid unexpired passport or other suitable travel document, or document of identity and nationality, if such document is required under the regulations issued by the Attorney General.

A regulation issued by the Attorney General requires (with specified exceptions) that an immigrant shall present a valid passport with an expiration date of at least 60 days beyond the expiration date of the immigrant's visa. 8 C.F.R. § 211.1.[3] Each arriving nonimmigrant alien also, with certain exceptions, is required to present a "valid unexpired visa and an unexpired passport...." 8 C.F.R. § 212.1.

This statutory and regulatory scheme essentially contemplates that a non-citizen who enters the United States shall have one or more of certain entry documents, usually including a valid unexpired passport. And, while a foreign passport is not always "required" for entry (*e.g.*, a "passport is not required" of a Canadian national "except after a visit out of the Western Hemisphere," 8 C.F.R. § 212.1(a)), a foreign passport is clearly, and typically, one document "prescribed by statute or regulation for entry" into the United States. The possession of a counterfeit or altered foreign passport, therefore, is an offense under the plain language of § 1546(a).

The pre–1986 cases relied upon by Osiemi are not helpful to his argument. Specifically, *United States v. Campos–Serrano*, 404 U.S. 293, 92 S.Ct. 471, 30 L.Ed.2d 457 (1971), held that possession of a counterfeit alien registration receipt card was not an act punishable under § 1546(a). The Court held that although such a document may be used for reentry by certain persons into the United States, such cards were not *required for entry. Id.* at 298, 92 S.Ct. at 474. Moreover, such documents were issued to an alien *after* he had taken up

---

**1.** *United States v. Campos–Serrano*, 404 U.S. 293, 92 S.Ct. 471, 30 L.Ed.2d 457 (1971); *United States v. Rostrepo–Granda*, 575 F.2d 524 (5th Cir.), *cert. denied*, 439 U.S. 935, 99 S.Ct. 331, 58 L.Ed.2d 332 (1978); *United States v. Vargas*, 380 F.Supp. 1162 (E.D.N.Y.1974).

**2.** We set forth here the 1986 amendatory language by striking through the word deleted and underlining the words added:

> § 1546(a)
> Whoever knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other document ~~required~~ prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, permit, border crossing card, alien registration card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procured by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained; or....

(emphasis added).

**3.** The Fourth Circuit recently summarized this requirement as follows:

> The admission of immigrants to the United States is governed by 8 U.S.C. § 1181, which generally requires that the immigrant present a valid unexpired immigrant visa and a *valid unexpired passport or other suitable travel document.*

*Pascual v. Carroll*, 976 F.2d 726 [Table] (4th Cir.1992).

residence in this country and thus its essential purpose was not "to secure entry into the United States, but to identify the bearer as a lawfully registered alien residing in the United States." The Court concluded that § 1546 at that time covered only specialized "entry" documents and not alien registration receipt cards. Under the 1986 amendments to § 1546, however, not only are alien registration receipt cards and border crossing cards specifically listed, but the statute is expanded also to include any other document *prescribed* (but not *required*)—prescribed either by *statute or by regulation*—for entry into the United States.

Osiemi also relies on *United States v. Rostrepo–Granda*, 575 F.2d 524 (5th Cir.) *cert. denied*, 439 U.S. 935, 99 S.Ct. 331, 58 L.Ed.2d 332 (1978), and *United States v. Vargas*, 380 F.Supp. 1162 (E.D.N.Y.1974).[4] In *Rostrepo–Granda*, the defendant was convicted under § 1546 of using a foreign passport containing a United States nonimmigrant visa. On appeal to this court, the defendant relied on *Vargas* for the proposition that the statute did not apply to a foreign passport. This court did not reach the question of whether the pre-amendment language proscribed use of a counterfeit foreign passport, holding that the visa issued by the United States was sufficient in and of itself to support the conviction. This court wrote:

> The question does not turn on the effect of the Colombian passport alone. The visa had been issued by the United States. Its use was clearly within the plain language of section 1546 to which we are bound to give effect.

575 F.2d at 530.

Regardless of whether a foreign passport was or was not a document *required* for entry into the United States before the 1986 amendment, the 1986 amendment expanded the language so as to include within its ambit "other" documents "prescribed by statute or regulation" for entry into the United States. Foreign passports are among that class of documents prescribed both by statute and by regulation, for presentation both by immigrants and by nonimmigrant aliens, for them to enter the United States. As this court stated with regard to the visa in *Rostrepo–Granda*, we must now hold with regard to the counterfeit Nigerian passport in the case at bar: its use was clearly within the plain language of amended section 1546 to which we are bound to give effect. *Cf.* 575 F.2d at 530.

In so holding, we take exception to *United States v. Fox*, 766 F.Supp. 569 (N.D.Tex. 1991), to the extent that it is inconsistent with this opinion. *Fox* is the only post–1986 amendment case that we have found that expresses the view that knowing possession of a foreign counterfeit passport is not proscribed by the amended statute. Whether such a conclusion was necessary to decide *Fox* is doubtful. The defendant in *Fox* was a Canadian national who was not required to hold a passport in order to enter the United States. He carried, however, a homemade "diplomatic passport" from the fictional "Kingdom of Israel" or "Elohim's Kingdom of Israel" with references to Bible verses inscribed thereon. The court noted that Fox denied being a citizen of any worldly country and having allegiance to any political entity. The court found no indication "of congressional intent to make a substantive offense related to documents which are homemade and not represented as being issued by any real government, foreign or otherwise." 766 F.Supp. at 572. Thus, on that ground alone, the court held that the § 1546 charge against Fox should be dismissed.

Nonetheless, the Court in *Fox* went on to discuss "whether Fox's passport is a document required by statute or regulation" for entry into the United States, and concluded that it was not. In stating the question,

---

4. In *Vargas,* the district court held that a foreign passport was not a document *required* for entry into the United States within the meaning of § 1546(a). The court held that the statute applied only to documents that are exclusively entry documents issued by the United States (such as visas) and that the statute did not apply to passports issued by foreign governments. In view of the expanded language after the 1986 amendment, we believe that to adopt the holding of *Vargas* today would require us to disregard the plain language of amended § 1546(a).

the court failed to observe that the word "required" had been deleted by the 1986 amendment and that the document now need only be one that is "prescribed" by statute or regulation. We need not consider here whether the expanded language of § 1546(a), as amended, proscribes a facially bogus "passport" from a fictional kingdom, but it does proscribe possession of a counterfeit passport of the kind actually issued by a foreign government and falling within that category of documents that are prescribed for use in obtaining entry into the United States.

In so holding, we also have given due regard to the requirement strictly to construe criminal statutes. *Federal Communications Comm'n v. American Broadcasting Co.*, 347 U.S. 284, 296, 74 S.Ct. 593, 600, 98 L.Ed. 699 *reh'g denied*, 347 U.S. 965, 74 S.Ct. 773, 98 L.Ed. 1107 (1954). Strictly construed, taken literally, and given its plain and ordinary meaning, the language of § 1546(a), as amended, criminalizes the knowing possession of any counterfeited or altered document prescribed by statute or regulation for entry into the United States. Foreign passports are documents specifically prescribed by statute and regulations for use in obtaining entry into the United States. Knowing possession of a counterfeited or altered foreign passport, such as the one from Nigeria that Osiemi possessed at the time of his arrest, is an offense under § 1546(a).

■ Osiemi's remaining point is that his plea of guilty to possession of a counterfeit passport was not voluntarily made and was not made with an understanding of the nature of the charge and the consequences of the plea. He claims that it was misrepresented to him by counsel that he would be placed on probation and that he was without knowledge of "immigration ramifications" of his plea agreement.

At the rearraignment the trial court asked numerous questions of Osiemi and provided a number of explanations before accepting the plea agreement Osiemi had made with the government. Osiemi testified that he was 33 years of age, that he had a Bachelor of Science Degree in Business Administration from Southwest University in New Orleans, that he understood the nature of the proceeding, that he had had opportunity to discuss the case with his attorney, who was with him during the hearing, and that he was satisfied with the services of his counsel. Osiemi testified further that he had read and understood the nature of the charge against him, that he understood the consequences of entering a plea of guilty and that he knew he would waive his right to a trial by jury by entering a plea of guilty. The court explained the maximum possible sentence that could be imposed if Osiemi's plea of guilty were accepted, and Osiemi declared that he understood both the maximum sentence and the effect of the Sentencing Guidelines. Osiemi identified his signature on the plea agreement, affirmed that he was entering the plea because he was guilty, and that he was doing so voluntarily. Osiemi listened as the Assistant U.S. Attorney described the evidence that the government was prepared to present against Osiemi, and agreed with the statements made and admitted that he had committed the acts of which he was accused. Osiemi further stated that he was on probation arising from a previous conviction, that he understood what affect his guilty plea might have upon his probation, and nonetheless that he wished to maintain his guilty plea. The court found that Osiemi's plea was voluntary and had a basis in fact that contained all of the elements of the crime. The trial court accepted the guilty plea, the accompanying plea agreement, and entered a judgment of guilty on the plea.

Osiemi's claim that it was "misrepresented by counsel based on a plea bargain agreement between the United States and counsel that the petitioner will be placed on probation" has no support in the record. There was no reference to Osiemi being placed on probation for this crime. In fact, the trial court specifically asked Osiemi if he understood the maximum possible sentence, which the court had explained to him, and that such "is a maximum sentence that I might impose on your guilty plea to Count Two?" Osiemi answered, "Yes,

Sir." Again, the trial court asked Osiemi if he understood that "it is within the discretion of the court whether or not a maximum possible sentence and fine is imposed upon you in this case?" Again, Osiemi answered, "Yes, Sir." Turning to the Sentencing Guidelines, the trial court asked Osiemi if he understood "that the court can decide to impose a sentence on you that is greater or less than the Guidelines if I find that the Guidelines do not take into consideration other relevant facts concerning you or the crime to which you are pleading guilty?" And, again, Osiemi answered, "Yes, Sir."

Moreover, the written plea agreement, signed both by Osiemi and by his attorney of record, makes no reference whatever to a sentence of probation or to a recommendation for probation. Probation was never mentioned in the plea agreement or in the rearraignment.

■ Finally, the record is silent as to Osiemi's knowledge of the "immigration ramifications" of his guilty plea. It is well settled, however, that the possibility of deportation is only a collateral consequence of a guilty plea. *United States v. Gavilan,* 761 F.2d 226, 228 (5th Cir.1985); *see also United States v. Montoya,* 891 F.2d 1273, 1293 (7th Cir.1989); *United States v. Romero–Vilca,* 850 F.2d 177, 179 (3d Cir. 1988); *Downs–Morgan v. United States,* 765 F.2d 1534 (11th Cir.1985); *United States v. Russell,* 686 F.2d 35, 39 (D.C.Cir. 1982); *Fruchtman v. Kenton,* 531 F.2d 946, 948–949 (9th Cir.), *cert. denied,* 429 U.S. 895, 97 S.Ct. 256, 50 L.Ed.2d 178 (1976). This court also has held that the provisions of Rule 11 of the Federal Rules of Criminal Procedure are both inclusive and exclusive, and that "if the defendant is informed of these critical consequences, he need be informed of no others—such as possible consequent civil disenfranchisement or the like." *United States v. Dayton,* 604 F.2d 931, 937 (5th Cir.1979) (*en banc*), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980). Thus, under Rule 11 the district court was not required

to discuss the possibility of deportation with Osiemi.

AFFIRMED.