**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Mariela ZAPATA, Defendant-Appellant.
No. 73–3350.**

United States Court of Appeals,
Fifth Circuit.

July 17, 1974.

Jack V. Eskenazi, Federal Public Defender (Court-appointed not under Act), Edward B. Greene, Theodore J. Sakowitz, Asst. Federal Public Defenders, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Kerry J. Nahoom, Asst. U. S. Atty., Miami, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, and TUTTLE and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The appeal is from an adjudication of the appellant's guilt of importation of 2000 grams of cocaine, a Schedule II controlled substance, into the United States in violation of Title 21, U.S.C., § 952(a). The sole question presented for our review is whether the trial judge properly instructed the jury as to the intent nec-

essary to be proved to constitute guilt under § 952(a), and the accompanying penalty statute Title 21, U.S.C., § 960(a)(1). We reverse for what we consider the prejudicial deficiency of the jury instruction.

The appellant, Mariela Zapata;[1] arrived in the United States at Miami International Airport on July 29, 1973, on a flight from Baranquilla, Colombia. She passed through a preliminary customs inspection by offering her suitcase for search and by presenting a standard passenger declaration form stating that she was carrying no gifts which she was required to declare.[2] Following this preliminary inspection, as Ms. Zapata bent over to retrieve her suitcase, Customs Patrol Officer O'Connell noticed that she appeared to have on unusually bulky undergarments beneath her outerclothing, a pants suit. She was detained by Officer O'Connell and referred to a private room for a secondary customs inspection. This second inspection, which consisted of Ms. Zapata's removing her clothing in the presence of two female customs inspectors, yielded six packets containing approximately 2000 grams of 76% pure cocaine. The packets had been concealed underneath a girdle and corset which Ms. Zapata wore when she entered the United States. After being read a card advising her of her rights, Miranda v. Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, by a Spanish-speaking customs inspector, Ms. Zapata was questioned concerning her possession of the cocaine. She indicated an awareness of wrongdoing on her part,[3] but denied knowledge that the substance contained in the packets was cocaine. She further disclosed to customs inspectors her entry under a false passport. The record is open to the inference that a separate prosecution was at least initiated for this offense.

A grand jury returned an indictment charging Ms. Zapata in two counts as follows: Count I, knowingly and intentionally importing the 2000 grams of cocaine into the United States in violation of Title 21 U.S.C., § 952(a); and Count II, possession of the 2000 grams of cocaine with the intent to distribute it in violation of Title 21, U.S.C., § 841(a)(1). The external facts, as we have set them forth, were not in dispute at trial. The primary issue for decision by the jury was whether Ms. Zapata possessed the requisite intent to violate the two code sections at the times charged.

Ms. Zapata took the stand and related through an interpreter that the events culminating in her arrest at the Miami airport began in mid-July 1973, in the small town of Medellin, Colombia, where she resided. She testified that she was approached by a stranger, a foreigner, who offered her a sum of money if she would agree to transport some "raw materials" to the United States for him. She consented because of her desperate need of money to support her four children. A plan was arranged that day under which Ms. Zapata later met the stranger in Baranquilla. She was there supplied with a false passport, an airline ticket to Miami, traveling money in the

---

1. Mariela Zapata is the name appearing on the passport produced by the appellant upon her arrival in the United States. Testimony below indicates that the passport was false and that the appellant's true name is Glorida Stella Barbosa-Lopez. We refer to her as Ms. Zapata hereinafter.

2. We note that appellant, although travelling under a passport stating her name as Mariela Zapata, stated her name on her customs declaration form as Gloria L. Barbosa. She testified that a fellow passenger on the flight filled out the declaration form card for her.

3. The transcript of proceedings below does not disclose clearly to what this comment refers. There are three possible meanings: (i) Ms. Zapata's importation of an illegal substance, such as cocaine; (ii) her commission of an offense in failing to declare that she had packages concealed on her person; and (iii) her commission of an offense by entry in this country under a false passport. This uncertainty, which we consider surely existed undisposed of in the minds of the jurors at the time of trial, is crucial to the outcome of this appeal. See text accompanying note 7, infra.

amount of $500, and the cocaine and undergarments in which to secrete it. The stranger agreed to meet Ms. Zapata upon her arrival in Miami. She was reassured several times by the stranger that everything which she would be doing was perfectly legal and that she would incur no penalties as a result of her actions.

At the close of all the testimony, counsel for the defendant and for the United States engaged in a lengthy charge conference with the district judge as to jury instructions to be given covering the requisite proof of intent under Title 21, U.S.C., §§ 952(a) and 960(a)(1).[4]

The prosecution requested an instruction which tacitly assumed that conviction required a showing that the defendant knew that the substance she was importing was cocaine. But the requested instruction permitted the jury to return a verdict of guilty upon a finding that the defendant consciously avoided learning the nature of the substance she imported

into the United States.[5] Defense counsel, for his part, requested simply that the jury be charged that the government had the burden of proving the defendant's actual knowledge that the substance she was importing was cocaine, or, in the alternative, that she knew that the substance was a controlled substance.[6]

The trial judge rejected both of the proposed instructions and gave the following:

[T]he government, in order to establish [that the cocaine was imported knowingly and intentionally], need not prove that this defendant knew that there was cocaine on her person.

But the government must prove beyond a reasonable doubt, if there is to be a conviction, that there was, in fact, cocaine imported into the United States; and that at the time it was imported, the person importing it had the guilty mind, *was aware of the fact that he was committing some kind of*

---

4. As to Count II, the charge of possession of the cocaine with intent to distribute, the court and both counsel were agreed that proof of a specific intent to distribute was required. Such a charge was given and, as noted *infra*, Ms. Zapata was acquitted under that count, so that this appeal concerns only the conviction under Count I, the violation of § 952(a).

5. The government's proposed charge on intent was as follows:

In considering this defense [of no knowledge], the jury is instructed that while negligence is never sufficient to charge a person with knowledge, one may not wilfully and intentionally remain ignorant of a fact important and material to his conduct; or, to put it another way, one cannot intentionally avoid knowledge by closing his eyes to facts which should prompt him to investigate. The test is whether there was a conscious purpose to avoid enlightenment; therefore, in considering the defense of no knowledge, you are instructed that if the jury believes that the defendant did not have a conscious purpose to avoid learning that the substance she is accused of carrying was in fact cocaine, the defendant should be acquitted. If, however, the jury finds from all the evidence beyond a reasonable doubt that

the defendant did have a conscious purpose to avoid learning that the substance she is accused of carrying was in fact cocaine, and if the jury further finds that every essential element of the crimes charged in Counts I and II of the indictment have been proved, the defendant may be convicted.

6. The defendant's proposed charge on guilty knowledge was:

The crimes charged in this case are serious crimes which require proof of a specific intent before the defendant can be convicted. Specific intent in this case means more than the general intent to possess and import the substance the defendant was carrying. Proof of specific intent requires proof that the defendant knew the substance she was carrying was cocaine. If you find that the defendant intended to possess the substance and intended to bring it into the country; but did not know the substance was cocaine: then you must find the defendant not guilty.

During the charge discussion with the judge, defendant's counsel orally requested an alternative instruction:

"In the alternative, I ask you to give that instruction, but substitute for the word 'cocaine' where it appears, the phrase 'a controlled substance'."

*wrong, or some sort of crime—not necessarily the crime of bringing in cocaine itself.*

\* \* \* \* \* \*

What we are saying is, to convict, in addition to Count I, the government must show that the act was done willfully, intentionally, the very act itself, and with a bad purpose to do something which the law forbids, not just an innocent mistake or accident, or with no purpose to do anything which the law forbids; but not necessarily any knowledge of this particular crime, nor that it was cocaine itself within the equipment there. [Emphasis supplied.]

As to Count II, which charged Ms. Zapata with possession with intent to distribute in violation of Title 21, U.S.C., § 841(a)(1), the trial judge charged the jury that the government had the burden of proving "that the defendant knowingly had cocaine in his [sic] possession, and he [sic] knew what it was." The judge amplified his Count II instruction in response to a question propounded by the jurors after they had retired for their deliberation by stating: "The government does have to prove [the defendant] in fact knew it was cocaine, because of the specific intent proposition in the charge that I gave you, as distinguished from any general intent."

Before the jury retired defense counsel objected to the charge on Count I on the stated ground that it failed to inform the jury that the government was required to prove that the defendant knew that she was importing either cocaine specifically or a controlled substance generally. From the jury verdict of guilty as to Count I and the consequent judgment and sentence, this appeal was timely taken.

The appeal raises the same question raised and preserved for review below, the sufficiency of the jury instruction as to appellant's knowledge that the substance brought into the country by her was cocaine specifically or a controlled substance generally, which she asserts is requisite under Title 21, U.S.C., § 952(a). The government answers that the instruction given by the trial court here was in substance equivalent to the charge requested by the appellant and, further, that the instruction was basically the same charge given by the trial court and approved by this Court in United States v. Jiminez, 5 Cir. 1973, 484 F.2d 91.

■■ Viewed in the context of the testimony and evidence in this particular case, we agree that the jury charge was defective, but we take a different approach from that urged by appellant. The instruction given was fundamentally misleading in that it allowed the jury to convict appellant on an incorrect theory of criminal liability. The defect is brought into sharp focus by the peculiar circumstances of this case. We do not reach the broader legal question whether the instruction as given was sufficient to charge specific intent under the statute as construed by *Jiminez,* supra.[7]

7. We record, however, our opinion that § 952(a) is a specific intent statute and requires an instruction that makes clear to the jury the burden upon the government to prove in a prosecution for its violation the defendant's knowledge of the nature of the substance imported. We indicated as much in *Jiminez* where we said:
   The jury understood it still had to decide whether the government proved Miss Jiminez knew what her panties contained. This is well established by the jury's post-instruction inquiry to the judge as to whether knowing, intentional importation required knowledge that the substance in

her panties was cocaine in particular or whether it was sufficient if she knew it whether a Class II narcotic in general.
Decisions under Title 21, U.S.C., § 174, the predecessor statute of current § 952(a), clearly required a showing that the defendant in prosecutions under that section had knowledge that the substance he was importing was a narcotic substance. See, e. g. United States v. Lasalandra, 2 Cir. 1970, 421 F.2d 1261, 1262, cert. denied 398 U.S. 931, 90 S.Ct. 1830, 26 L.Ed.2d 97; United States v. Mont, 2 Cir. 1962, 306 F.2d 412, 416, cert. denied 371 U.S. 935, 83 S.Ct. 310, 9 L.Ed.2d 272; United States v. Christmann, 2 Cir.

The defect in the instruction arises from its conjunction with testimony that Ms. Zapata stated that she knew she was doing something wrong. The ambiguous nature of this statement was pointed out in Note 3, supra. This ambiguity coupled with the judge's instruction to the jury that they could convict Ms. Zapata on Count I if the government proved that she "was aware of the fact that [she] was committing some kind of wrong, or some sort of crime—not necessarily the crime of bringing in cocaine itself," raises a likelihood that the jury found Ms. Zapata guilty under Count I under an erroneous theory of law. The jury was entitled to conclude from the judge's instruction that Ms. Zapata's possession of the cocaine on arrival coupled with either (1) her failure to declare the cocaine to customs officials or (2) her entering the United States under a false passport was sufficient to support a finding of guilty under Count I. The conviction on Count I viewed in contrast to the acquittal on Count II, raises a strong inference that the jury did precisely this. Neither of these assumptions is supported by a correct legal theory, and a conviction under either theory would constitute a violation of Fifth Amendment due process. Cameron v. Hauck, 5 Cir. 1967, 383 F.2d 966, 973, cert. denied 1968, 389 U.S. 1039, 88 S.Ct. 777, 19 L.Ed.2d 828. In the circumstances here, the record makes it impossible to determine whether such an impermissible constitutional foundation undergirds the guilty verdict. A new trial is in order as to Count I of the indictment.

Reversed.

1962, 298 F.2d 651, 652. The wording in the new statute is of course slightly changed from that in § 174. The former statute penalized those who "fraudulently or knowingly" imported narcotic substances; the new statute applies to those who "knowingly or intentionally" do the proscribed acts. This change in the language used does not suggest to us that the burden of the government as to proof of intent has been lightened under the new statute, nor does the legislative history, which is silent on the matter, support such a conclusion. U.S.Code Cong. and Admin.News, 91st Cong. 2d Sess., pp. 4637 et seq. (1970). In our view the government continues to have the burden of proving the specific intent denounced by the statute. Cf. Dixon v. United States, 1954, 347 U.S. 381, 384–386, 74 S.Ct. 566, 568–569, 98 L.Ed. 785, 788–789.