**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Francisco RESTREPO–GRANDA, a/k/a
Dario Toro Garces,
Defendant-Appellant.**

No. 77–5550.

United States Court of Appeals,
Fifth Circuit.

June 19, 1978.

Rehearing and Rehearing En Banc
Denied Aug. 23, 1978.

Donice Alverson, New Orleans, La. (Court-appointed), for defendant-appellant.

John P. Volz, U. S. Atty., Mary Wm. Cazalas, Ronald Fonseca, Irving J. Warshauer, Asst. U. S. Attys., New Orleans, La., for plaintiff-appellee.

Before BROWN, Chief Judge, AINSWORTH and VANCE, Circuit Judges.

VANCE, Circuit Judge.

This is an appeal by Francisco Restrepo-Granda from his conviction under all counts of a three-count indictment.[1]

1.          COUNT 1

On or about December 11, 1976, in the Eastern District of Louisiana, FRANCISCO RESTREPO–GRANDA aka Dario Toro Garces, knowingly and intentionally did unlawfully import from a place outside of the United States, approximately 1943.6 grams of Cocaine-Hydrochloride, a Schedule II narcotic drug controlled substance; all in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).

In Count 1 he was charged with unlawful importation of 1,943.6 grams of cocaine. In Count 2 he was charged with possession with intent to distribute the cocaine. Count 3 charged him with unlawful use of a passport and visa issued to another person. He was sentenced to ten years under each of the first two counts and five years on Count 3, together with a special three-year parole term as required by 21 U.S.C. § 841. All three terms of imprisonment will run concurrently.

Appellant is a resident of Medellin, Colombia. On December 11, 1976 he arrived at New Orleans, Louisiana on a flight from Panama City, Panama. He held a round-trip ticket and carried a Colombian passport and a United States visa, both issued in the name of Dario Toro Garces. He passed the preliminary customs inspection by presenting a standard customs declaration and offered his suitcase for search. During the course of the inspection the customs official became suspicious because of the thickness and weight of several coathangers. She completed her inspection and summoned a customs police officer, Charles Meaders, whom she informed of her suspicions.

Meaders ordered the appellant to a secondary inspection area for a more thorough examination of his luggage, clothing and personal effects. In the course of the examination, Officer Meaders also noticed that the coathangers were "very thick." He drilled a small hole in one of the hangers and discovered a white, powdery substance which field tested positive for cocaine. He subsequently drilled holes in all seven coathangers discovering that all contained cocaine.

COUNT 2

On or about December 11, 1976, in the Eastern District of Louisiana, FRANCISCO RESTREPO–GRANDA, aka Dario Toro Garces, knowingly and intentionally did unlawfully possess wiht [sic] intent to distribute approximately 1943.6 grams of Cocaine-Hydrochloride, a Schedule II narcotic drug controlled substance; all in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 3

On or about December 11, 1976, in the Eastern District of Louisiana, FRANCISCO RES-

The appellant was advised of his rights in Spanish and was questioned. He revealed his true identity but denied any knowledge of the cocaine. The story which he told during the course of his questioning was that he was from Colombia and had come to the United States with the aid of a "Mr. Winters," whom he had met in Colombia on or about November 15, 1975. The passport, visa and suitcase had been furnished him by Mr. Winters. He was to go to a local motel where he would be met by individuals unknown to him. He was to give them the suitcase. Mr. Restrepo-Granda was asked whether he wanted to cooperate by going to the motel to wait for the individuals, but he declined.

In his own defense, appellant testified and gave additional details. He stated that in Medellin, Colombia he was employed at various times as a taxi driver and automobile broker and that when he left he was earning approximately $25 a week. He stated that five or six days before he left Colombia he was approached by an American named "Mr. Winters" in a park in Medellin. During conversations with Mr. Winters, Restrepo-Granda related that he was dissatisfied with his employment and his future in Colombia. He stated that Winters offered to help him move to the United States. Restrepo-Granda testified that he was unable to obtain a United States visa because he did not have enough money. Winters offered to provide him with an illegal passport if he would be willing to take the risk. Appellant agreed and Winters supplied him with a Colombian passport and an American visa. Restrepo-Gran-

TREPO–GRANDA, aka Dario Toro Garces, did knowingly, willfully and unlawfully use and attempt to use a Republic of Colombia Passport, No. K–3411919, which purportedly contained on page 7 of the passport, a United States non-immigrant visa, No. 003263, issued at the United States Consulate, Medellin, Colombia, on April 23, 1974, when in truth and fact, as he well knew, the immigrant visa and passport had been issued in the name of another person, Dario Toro Garces; all in violation of Title 18, United States Code, Section 1546.

da did not have a suitcase which was large enough, so Winters also offered to lend him a suitcase. He turned over to Winters his savings of 22,000 Colombian pesos, his clothes, and also gave Winters a photograph of himself.

According to appellant's testimony, Winters returned the suitcase to him packed with appellant's own clothes, gave him the American equivalent of the 22,000 pesos (approximately $700 to $800) and the passport with his photograph in it. He says that Winters informed him that he also had sent his photograph to a friend who would meet him at the airport in New Orleans. He was to stay in a motel for a couple of days until Winters' friend found living quarters and employment for him. It was Restrepo-Granda's testimony that he never asked and was not informed of the name or description of the person or persons he was to meet at the New Orleans International Airport.

Restrepo-Granda then paid his landlord one month's rent in advance and left Colombia on the 8th or 9th of December for the island of San Andres. From there he caught a flight to Panama City and left for New Orleans on the 11th. He claims that during the entire three-day trip he never observed the cocaine-filled coathangers. He opened the packed suitcase when Winters first gave it to him and saw that it was "well organized." He testified that thereafter he only opened his suitcase at its corner in order to get out necessary items and that with the exception of a shirt he never changed his clothes.

■ Appellant first contends on appeal that the evidence is insufficient to establish the knowledge required for conviction under the first two counts. In determining whether the evidence was sufficient to support a conviction, all evidence and reasonable inferences therefrom must be viewed in the light most favorable to the government. *Glasser v. U. S.,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). On appeal it is our function to determine whether a reasonably minded jury could accept as adequate and sufficient the evidence to support the con-

clusion of defendant's guilt beyond a reasonable doubt. *United States v. Alonzo,* 571 F.2d 1384 (5th Cir. 1978); *U. S. v. Warner,* 441 F.2d 821 (5th Cir.), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971).

■ Although knowledge that the substance imported is a particular narcotic need not be proven, 21 U.S.C. 952(a) is a "specific intent" statute and requires knowledge that such substance is a controlled substance. *U. S. v. Jewell,* 532 F.2d 697 (9th Cir.), *cert. denied,* 426 U.S. 951, 96 S.Ct. 3173, 49 L.Ed.2d 1188 (1976); *U. S. v. Zapata,* 497 F.2d 95, 98 n. 7 (5th Cir. 1974). Like other facts knowledge is subject to proof by circumstantial evidence. See *e. g., Montoya v. U. S.,* 402 F.2d 847 (5th Cir. 1968).

■ In passing on the sufficiency of such evidence, we view it in the light of the surrounding circumstances. Thus, in *Barnes v. United States,* 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973), the accused was convicted of possession of United States Treasury checks "knowing them to be stolen." Barnes possessed stolen Treasury checks payable to persons that he did not know. He provided no plausible explanation for such possession consistent with his innocence. The supreme court upheld his conviction reasoning: "On the basis of this evidence alone, common sense and experience tell us that petitioner must have known or been aware of the high probability that the checks were stolen." *Barnes, supra,* at 845, 93 S.Ct. at 2363.

■ Under undisputed facts, the appellant here was shown to have entered the United States with a round-trip plane ticket from Panama City, Panama after paying his rent in Colombia for a month in advance. He entered with a passport and visa that he knew were illegal. He entered with almost four and one-half pounds of cocaine which has a street value of over one million dollars. The cocaine was contained in seven coathangers which were inordinately heavy and thick. From their nature, the jury could have concluded that the coathangers

must have been fabricated with considerable effort and care and for the special purpose of transporting the contraband. His inherently improbable story does not provide accused with a plausible explanation for his possession of the cocaine consistent with his innocence. When the cocaine was discovered, the appellant refused the customs official's suggestion that he assist them in apprehending the person or persons whom he claimed were to meet him at the airport or later at a designated motel. With these facts we conclude that there was sufficient circumstantial evidence to support a finding that this appellant had knowledge of the presence of the controlled substance in his suitcase.

A more thorough examination of the meaning of "knowingly" as used in the statutes is required because of appellant's contention that the trial judge erred by giving a "deliberate ignorance" charge.[2] Appellant's contention poses the question as to whether required knowledge can be established by proof of deliberate ignorance. The term as used denotes a conscious effort to avoid positive knowledge of a fact which is an element of an offense charged, the defendant choosing to remain ignorant so he can plead lack of positive knowledge in the event he should be caught.

In *Turner v. United States*, 396 U.S. 398, 416 n. 29, 90 S.Ct. 642, 652, 24 L.Ed.2d 610 (1970), the supreme court adopted the Model Penal Code definition in defining "knowingly" as used in 21 U.S.C. § 174, the predecessor of section 841.[3] The model code section reads:

When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence, unless he actually believes that it does not exist. Model Penal Code § 2.02(7) (Proposed official draft, 1962). Turner was found guilty of possessing heroin that he knew was a smuggled drug. Turner may not have had actual knowledge of who smuggled the heroin or when or how the smuggling was done, but the court pointed out that very little heroin was made in the United States and "we are confident that he was aware of the 'high probability' that the heroin in his possession had originated in a foreign country."

In *United States v. Jewell, supra,* the ninth circuit presumed congressional acceptance of the supreme court's definition of "knowledge" by reenactment of present statutes with awareness of the *Turner* and *Leary* decisions.

*Jewell* also notes that "knowledge" through deliberate ignorance has been accepted by leading commentators in both the United States and England. The opinion quotes from Professor Glanville Williams as follows: [4]

> To the requirement of actual knowledge there is one strictly limited exception. . . . [T]he rule is that if a party has his suspicion aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance, he is deemed to have knowledge. . . The rule that wilful blindness is equivalent to knowledge is essential, and is found throughout the criminal law.

2. The charge read:

> If you find from all the evidence beyond a reasonable doubt that the defendant believed that he had cocaine or a controlled substance and deliberately and consciously tried to avoid learning that there was cocaine or a controlled substance in the package he was carrying in order to be able to say, should he be apprehended, that he did not know, you may treat this deliberate avoidance of positive knowledge as the equivalent of knowledge.
>
> In other words, you may find that a defendant acted knowingly, if you find that either he actually knew he had cocaine or a controlled substance and that he deliberately

> closed his eyes to what he had every reason to believe was the fact. I should like to emphasize, ladies and gentlemen, that the requisite knowledge cannot be established by demonstrating merely that he was negligent or even foolish or stupid.

3. The supreme court had previously adopted the same definition in determining the intended scope of "knowing" in former 21 U.S.C. § 176a. *Leary v. United States*, 395 U.S. 6, 46, n. 93, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

4. G. Williams, *Criminal Law*; The General Part § 57 at 157 (2d ed. 1961).

On the same point another commentator, Professor Rollin M. Perkins, was quoted as stating:[5]

> One with a deliberate antisocial purpose in mind . . . may deliberately 'shut his eyes' to avoid knowing what would otherwise be obvious to view. In such cases, so far as criminal law is concerned, the person acts at his peril in this regard, and is treated as having 'knowledge' of the facts as they are ultimately discovered to be.

The decisions from other circuits seem to harmonize with the expressed conclusion that deliberate ignorance is the equivalent of knowledge under the statutes here involved.[6]

Under facts similar to those now presented, two second circuit cases, *United States v. Joly*, 493 F.2d 672 (2d Cir. 1974), and *United States v. Olivares-Vega*, 495 F.2d 827 (2d Cir. 1974), hold that wilful blindness of a fact constitutes an awareness of so high a probability of the existence of the fact as to justify an inference of knowledge of it.

In *U. S. v. Jacobs*, 475 F.2d 270, 287–288 (2d Cir. 1973), the court reasoned that the supreme court's approval of the Model Penal Code definition of knowledge implies approval of an instruction that the knowledge requirement is satisfied by proof of a "conscious purpose to avoid learning the truth."

Decisions from the second, sixth, seventh, ninth and tenth circuits have given approval to the incorporation of these principles into a "deliberate ignorance" instruction.[7] We conclude that the decisions from these circuits should be followed here.

On the whole the instruction given to the jury on deliberate ignorance incorporated a correct statement of law and was sufficient to apprise the jury that the appellant could be found to have acted knowingly if: (1) he knew he was importing cocaine or a controlled substance, or (2) he believed he was importing a controlled substance and through willful blindness failed to confirm that belief.

Appellant's contention that the charge should have contained a balancing instruction[8] and that it had technical defects are not sufficient to present reversible error. There was no objection to the instruction as given, and the charge was not so deficient as to be plain error.

Appellant correctly points out that the prosecutor was guilty of improper conduct in closing argument. We recently had occasion to spell out at some length our continued dismay at the tendency of overzealous prosecutors to resort to conduct such as is disclosed by the record before us.

---

5. R. Perkins, *Criminal Law*, 776 (2d ed. 1969).

6. *United States v. De Garces*, 518 F.2d 1156, 1160 (2d Cir. 1975); *Verdugo v. United States*, 402 F.2d 599, 604 (9th Cir. 1968) (former 21 U.S.C. § 174); see *United States v. Moser*, 509 F.2d 1089, 1092–1093 (7th Cir. 1975) (specific intent in 21 U.S.C. § 841[a][1]; *United States v. Yasser*, 114 F.2d 558, 560 (3d Cir. 1940) (predecessor of 18 U.S.C. § 152; dicta); *cf., United States v. Cooperative Grain and Supply Co.*, 476 F.2d 47, 59 (8th Cir. 1973) (dicta that guilty avoidance of knowledge can supplant positive knowledge under 18 U.S.C. § 287).

7. *U. S. v. Jewell, supra; U. S. v. Dozier*, 522 F.2d 224, 226 (2d Cir. 1975); 21 U.S.C. § 841(a)(1) upheld the following jury instruction:
   If you find from all the evidence beyond a reasonable doubt either that the defendant knew that she was helping in a cocaine transaction, or that she has a conscious purpose to avoid finding out the identity of the substance so as to close her eyes to the facts, you could find sufficient evidence to find her guilty beyond a reasonable doubt.
   *United States v. Thomas*, 484 F.2d 909, 912–913 (6th Cir. 1973) (18 U.S.C. § 922[a][6] Firearms); *United States v. Grizaffi*, 471 F.2d 69, 75 (7th Cir. 1972) (18 U.S.C. §§ 371, 1008, 1341; Labuy, Instruction # 4.05, 33 F.R.D. 553 [1965], approved); *Griego v. United States*, 298 F.2d 845, 849 (10th Cir. 1962) (reversal of conviction under former 21 U.S.C. § 174, jury should be given "deliberate ignorance" instruction).

8. Model Penal Code § 2.02(7) on which appellant bases this contention provides in part: "When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person is aware of a high probability of its existence, *unless he actually believes that it does not exist.*" [Emphasis supplied].

*United States v. Morris*, 568 F.2d 396 (5th Cir. 1978). The prosecutor's reference to the accused's testimony as "a lie" and similar statements, was reprehensible and wholly unnecessary. Presumably, the trial judge would have taken corrective action if there had been an objection. Our concern, however, is not grounded on any finding of substantial prejudice in this case. Looking to the record as a whole, we conclude that reversible error does not appear from such argument.

■ Appellant also complains that he was improperly convicted under Count 3 because a passport issued by a foreign government is not a "document required for entry" within the purview of 18 U.S.C. § 1546. The accused was charged with using a passport containing a United States non-emigrant visa in violation of that section. The accused admits that he knowingly used the passport and visa which had been issued to Dario Toro Garces. Appellant's reliance on *United States v. Vargas*, 380 F.Supp. 1162 (E.D.N.Y.1974) is misplaced. The question does not turn on the effect of the Colombian passport alone. The visa had been issued by the United States. Its use was clearly within the plain language of section 1546 to which we are bound to give effect. *United States v. Carrillo-Colmenero*, 523 F.2d 1279 (5th Cir. 1975).[9]

AFFIRMED.

---

9. It is doubtful that the contention would be of assistance to appellant even if it appeared to have merit. His conviction under Count 3 does not add materially to the pains and penalties he will suffer on conviction under Counts 1 and 2. Application of the concurrent sentence doctrine would appear to be appropriate. See *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).