### UNITED STATES of America, Plaintiff,

v.

### Herbert L. FREEL, Defendant.

### No. 86–18–Cr–Oc–12.

United States District Court, M.D. Florida, Ocala Division.

March 1, 1988.

Richard Alan Poole, Asst. U.S. Atty., Jacksonville, Fla., for plaintiff.

George P. Kickliter, Tampa, Fla., for defendant.

## DECISION AND ORDER

MYRON L. GORDON, Senior District Judge.

The defendant, Herbert L. Freel, was convicted of six counts of mail fraud and one count of ERISA embezzlement. He now moves for a new trial pursuant to Rule 33, Federal Rules of Criminal Procedure. Mr. Freel challenges my denial of his motion for acquittal and certain other specific rulings made during the course of the trial.

Rule 33 permits the granting of a motion for a new trial "in the interest of justice." Ordinarily, new trial motions are granted "only where the credibility of the government's witnesses ha[s] been impeached and the government's case ha[s] been marked by uncertainties and discrepancies." *United States v. Martinez*, 763 F.2d 1297, 1313 (11th Cir.1985). Mr. Freel asserts that several considerations render a new trial appropriate in this case. I disagree and will, therefore, deny his motion.

## BACKGROUND

At the times relevant to this case, Herbert Freel was president and owner of three dairies. The employees of these dairies were participants in the ERISA-covered "Modern Dairy Farms and Its Related Employers Profit Sharing Plan and Trust" [the Plan], a profit sharing plan for which Mr. Freel served as trustee. Mr. Freel also served as president of Transworld Farms, Inc., a company incorporated by his daughter, Dana. Dana Freel incorporated another company that is involved in this case:

Transworld Foods, Inc. Hereafter, I will refer to Dana Freel's two companies as the "Transworld companies."

On September 24, 1982, and January 12, 1983, Herbert Freel, as trustee of the Plan, issued lines of credit in aggregate value of $800,000 to the Transworld companies. Pursuant to these lines of credit, the Plan lent the Transworld companies in excess of $750,000. To date, these loans have not been repaid. The government alleges that these loans constituted a willful scheme on the part of Mr. Freel to defraud the Plan and its participants and to convert the Plan funds to his own use.

In a fourteen count indictment, the government charged Mr. Freel with thirteen counts of mail fraud, pursuant to 18 U.S.C. § 1341 and one count of ERISA embezzlement pursuant to 18 U.S.C. § 664. In order to reduce the time for trial of this case, I ordered that the government proceed at this time on only seven of the fourteen counts. The government selected the following counts: three counts of mail fraud involving the March 1983 mailing of an "ERISA Notice to Interested Parties" by Mr. Freel's attorney, Charles Nash, three counts involving Mr. Nash's November 1983 mailing of the "Notices to Plan Beneficiaries Regarding Withholding of Income Tax", and one count of embezzlement. The jury returned guilty verdicts on all seven counts tried. The seven untried counts remain unresolved.

## MOTION FOR ACQUITTAL

■ The defendant contends first that I erred in denying his motion for acquittal at the close of all evidence. Specifically, he contends that the evidence was insufficient to establish that Mr. Freel committed embezzlement knowingly and that the government failed to establish mail fraud.

On a motion for judgment of acquittal, the court must view the evidence in the light most favorable to the verdict, and, under that light, determine whether the evidence is sufficient to support the verdict.... Thus, on this motion the court assumes the truth of the evidence offered by the prosecution.

*Martinez, supra,* 763 F.2d at 1312 (citation omitted). Viewing the evidence in this light, I am persuaded that the government's evidence was clearly sufficient to withstand a motion for acquittal. Evidence was presented showing that Mr. Freel exercised significant control over his daughter's corporations. Furthermore, Carl Hartley, Mr. Freel's former attorney, testified that he told Mr. Freel, in no uncertain terms, that arranging a loan between the Plan and one of his companies would be unlawful. A former trustee of the Plan, Robert Oatley, testified that he conveyed the same advice to Mr. Freel on numerous occasions. In light of this evidence, I am persuaded that the evidence supports a verdict based on Mr. Freel's *knowing* conversion of the Plan funds to his own use.

■ The evidence, viewed most favorably towards the verdict, also supports the jury's determination regarding mail fraud. Mr. Freel contends that the mailings in question could not have been made in furtherance of the scheme because they were mailed later than the dates on which the Transworld loans were extended. However, mailings that occur after an alleged fraud or scheme may be construed to be made in furtherance of the scheme if such mailings shroud the scheme with an "aura of legitimacy" and prevent or delay discovery, investigation, or litigation. *See United States v. Bosby,* 675 F.2d 1174 (11th Cir.1982); *United States v. Toney,* 598 F.2d 1349 (5th Cir.1979), *cert. denied,* 444 U.S. 1033, 100 S.Ct. 706, 62 L.Ed.2d 670 (1980).

The record establishes that at least one beneficiary was assured by the mailings. Christine Morris testified that she expected liquidation of her account in the Plan to be forthcoming upon receipt of the two ERISA notices. Ms. Morris' understanding of these mailings may have delayed her from making inquiries thereby delaying investigation by the Department of Labor or the Internal Revenue Service. Accordingly, I conclude that these mailings furthered Mr. Freel's loan scheme.

## TIME LIMITATIONS

■ Mr. Freel contends that his sixth amendment protections were compromised by the restrictions that I imposed on the length of the trial. Trial courts have discretion to exercise control over the length of trial by placing reasonable limits on time and presentation of evidence. *See, e.g., Johnson v. Ashby*, 808 F.2d F.2d 676 (8th Cir.1987) (affirming imposition of time restrictions); *Flaminio v. Honda Motors Co., Ltd.*, 733 F.2d 463 (7th Cir.1984) (same); *United States v. An Article of Drug*, 415 F.2d 390 (5th Cir.1969) (affirming district court limitation on number of expert witnesses); *cf. Taylor v. Illinois*, — U.S. ——, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (sixth amendment protections are not absolute; defendant's right to subpoena witness may be limited in appropriate cases by state's interest in integrity of adversary proceedings). Time and evidentiary limitations are, of course, improper if they render the trial fundamentally unfair. *Wammock v. Celotex Corp.*, 793 F.2d 1518, 1527 (11th Cir.1986), *withdrawn on other grounds*, 835 F.2d 818 (11th Cir.1988).

Here, however, Mr. Freel has failed to establish that the time constraints imposed deprived him of a fair trial. Mr. Freel's counsel argues that he expected to have a two week trial but that only one week was allowed; this argument fails to note that the court also required the government to proceed on only seven of the fourteen counts. Time limits were imposed to facilitate the trial process and were not rigid. In setting the time limitations I expressly advised counsel that extensions could and would be granted if the interests of justice required it. Upon motion of either counsel and for just cause, the deadlines could have been extended. Mr. Freel's counsel neither interposed an objection nor made an offer of proof of the testimony of the witnesses whom he now baldly asserts "were not only favorable to [Mr. Freel's] defense but crucial. . . ." That counsel believed that such an objection would be "fruitless" does not relieve him of the obligation to articulate his concerns for the record. *See Johnson, supra*, 808 F.2d at 678–79. Absent a timely objection, an offer of proof, or a showing of plain error, I persist in my original ruling. I am satisfied that Mr. Freel had ample time to present his own case and to challenge the government's case.

## RULE 404(b) CONCERNS

■ The defendant also seeks a new trial on grounds of improperly admitted extrinsic evidence. Over defendant's objection, I admitted evidence regarding two loan transactions involving one Joe Reynolds and the defendant [Reynolds loans]. The Reynolds loans allegedly occurred prior to the loans from the Plan to the Transworld companies. One of the loans involved Mr. Freel personally, and the other allegedly involving Mr. Freel as trustee of the "Charles McCarthur Dairy Trust." Carl Hartley testified that Mr. Freel inquired whether monies could be borrowed from the Plan to repay Mr. Reynolds; Mr. Hartley advised him that such a loan would be unlawful.

Relying on Rules 404(b), 403 and 402, Federal Rules of Evidence, the defendant objected at trial, and reasserts his objection by virtue of the present motion, to admission of any evidence regarding these loans and Mr. Hartley's advice. Rule 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

As a threshold matter, Mr. Freel urges that admission of the extrinsic Reynolds loan evidence was improper because the nature and enforceability of the loans are matters of some controversy. While it is true that extrinsic acts must be "proved", *United States v. Dothard*, 666 F.2d 498, 502 (11th Cir.1982), the government need produce "only enough evidence to present a jury question on the issue whether defendant committed the act." *United States v. Chilcote*, 724 F.2d 1498, 1502 n. 2 (11th Cir.), *cert. denied*, 467 U.S. 1218, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984).

In my opinion, the copies of the Reynolds loan notes and Mr. Hartley's testimony con-

stitute sufficient evidence to raise at least the necessary jury question. I turn, then, to Mr. Freel's concern over the relevancy and prejudicial effect of the Reynolds loan evidence.

In this circuit, district courts are required to undertake the following analysis to determine whether extrinsic evidence is admissible under Rule 404(b):

> First it must determine that the extrinsic offense evidence is relevant to an issue other than defendant's character. Second the evidence must possess probative value that is not substantially outweighed by the undue prejudice....

*United States v. Beechum,* 582 F.2d 898, 911 (5th Cir.1978) (en banc), *cert. denied,* 440 U.S. 920, 99 S.Ct. 1244, 59 L.Ed.2d 472 (1979), cited with approval in *Chilcote, supra,* 724 F.2d at 1502.

The government did not propound the Reynolds loan evidence to discredit Mr. Freel's character or to establish the impropriety of those loans. The Reynolds loan evidence was relevant only to the significant question of Mr. Freel's knowledge and intent regarding his later loans to the Transworld companies. Directly relevant to this case was the evidence that in 1980 Mr. Freel received Carl Hartley's legal opinion on the propriety of undertaking loans from his companies' profit sharing plan. The background evidence regarding the Reynolds loans was also relevant as it tended to make Mr. Hartley's testimony "more probable or less probable than it would [have been] without the evidence." Rule 401, Federal Rules of Evidence.

Mr. Freel's concern regarding the prejudicial effect of the evidence raises the matter addressed by the second prong of the *Beechum* analysis. The second prong is "essentially an application of Fed.R.Evid. 403." *United States v. Williford,* 764 F.2d 1493, 1497 (11th Cir.1985). In my opinion, the probative value of Mr. Hartley's testimony far outweighed any possible prejudice to Mr. Freel. Rule 403 is to be applied sparingly. *United States v. Cole,* 755 F.2d 748, 766–67 (11th Cir.1985).

Mr. Freel was afforded the opportunity to cross examine Mr. Hartley and to challenge the existence of the Reynolds loans.

Indeed, Mr. Freel's counsel ably cross examined Mr. Hartley and alerted the jury to Mr. Freel's concerns regarding the nature of the Reynolds loans. Thus, I do not believe that the Reynolds loan evidence improperly raised questions about Mr. Freel's extrinsic business activities.

## JURY INSTRUCTIONS

■ Mr. Freel also seeks a new trial on grounds of erroneous jury instructions. The defendant challenges specifically my decision to submit a deliberate indifference instruction and to submit the government's, rather than the defendant's, proposed instruction on embezzlement. Jury instructions must be examined as a whole to determine whether they "adequately [present] the issues and the law to the jurors." *United States v. Hewes,* 729 F.2d 1302, 1316 (11th Cir.1984), *cert. denied,* 469 U.S. 1110, 105 S.Ct. 790, 83 L.Ed.2d 783 (1985). The wording of the charge to the jury does not give rise to reversible error "so long as the charge correctly states the substance of the law." *United States v. Sorrells,* 714 F.2d 1522, 1531 (11th Cir. 1983).

I gave a "deliberate indifference" charge to the jury.

> The term [deliberate indifference] as used denotes a conscious effort to avoid positive knowledge of a fact which is an element of an offense charged, the defendant choosing to remain ignorant so he can plead lack of positive knowledge in the event he should be caught.

*United States v. Restrepo–Granda,* 575 F.2d 524, 528 (5th Cir.), *cert. denied,* 439 U.S. 935, 99 S.Ct. 331, 58 L.Ed.2d 332 (1978).

Mr. Freel does not argue that the instruction misrepresents the law of this circuit. Instead, he asserts that the facts of this case do not support its use. Mr. Freel relies upon *Restrepo–Granda,* to support his position. In that case, however, the court approved the deliberate indifference instruction in cases where "willful blindness of a fact constitutes an awareness of so high a probability of the existence of the fact as to justify inference of knowledge of it." *Id.* at 529. The instant case presented just such facts.

Mr. Freel received legal admonitions regarding similar transactions and nevertheless pursued the acts for which he was ultimately indicted. In my opinion, these circumstances are precisely the type of circumstances which called for the use of the deliberate indifference instruction.

Mr. Freel also contends that a new trial is warranted because I erred by selecting the government's embezzlement instruction over his. I disagree. Considering the charge as a whole, I am persuaded that the jury received adequate and accurate direction on the law regarding embezzlement. While it is true that the defendant's requested embezzlement instruction contained more verbiage regarding the embezzlement count's intent element, I believe that my decision to charge the jury using the government's proposed instruction was appropriate. Detailed instructions on intent were also contained within another instruction.

## CONCLUSION

Mr. Freel has not demonstrated that the jury's verdict constituted a miscarriage of justice. A new trial is not warranted.

Therefore, IT IS ORDERED that the defendant's motion for a new trial be and hereby is denied.