United States Court of Appeals,

Eleventh Circuit.

No. 95-2535.

UNITED STATES of America, Plaintiff-Appellant,

v.

Juan Ricardo MATTOS, a/k/a Ricardo Mattos, Defendant-Appellee.

Feb. 14, 1996.

Appeal from the United States District Court for the Middle District of Florida. (No. 94-155-CR-T-25B), Henry Lee Adams, Jr., Judge.

Before ANDERSON and BLACK, Circuit Judges, and FAY, Senior Circuit Judge.

PER CURIAM:

A jury found Juan Ricardo Mattos guilty of conspiracy to possess cocaine with the intent to distribute. The District Court, however, found that the evidence showed "mere association with conspirators" and granted Mattos's renewed motion for judgment of acquittal. Because the evidence is sufficient to support the jury verdict, we reverse.

## I. BACKGROUND

Frederick Cox, a government informant, told the police that he was planning a cocaine deal with James Walsh. Walsh was going to obtain the cocaine from a supplier in Miami and Cox was going to help sell it to dealers in Atlanta. On March 22, 1994, at 10:22 a.m., Walsh called Mattos's home from a pay phone at the Lemon Tree restaurant in Clearwater. The pay phone was located two miles from Walsh's home. Later that day Walsh met with Cox. They discussed a five to ten kilogram cocaine deal. Cox asked about prices and quantities, and Walsh responded, "My guy's away for a week. I'm

gonna call him tonight, and, uh, set up the program."

After meeting with Cox, Walsh drove to the Lemon Tree pay phone and called Mattos's home in Miami. Walsh said that "the last four are 4072" and "have him call me." The last four digits of Walsh's pager were 4072. About an hour later Walsh drove to the same pay phone and called a pay phone at a Miami gas station, near Mattos's home. Walsh was overheard saying, "They want five to ten, we can do that, can't we?"

On March 31, Walsh again met with Cox about the cocaine deal and said that he would "try the house right now" in an attempt to contact the supplier. Walsh then drove to a pay phone and called Mattos's home.

On April 6, Cox paged Walsh. Walsh called Mattos's home eighteen minutes after the page, but before Walsh called Cox back. Five minutes after the call to Mattos's house, Walsh called Cox and told him that his supplier was "hung up" and "won't be back 'till Monday."

On April 11, Walsh was paged from a pay phone near Mattos's home, and he returned that call from a pay phone one minute later. On April 12 and 13, Walsh met with Cox about the deal. Cox told Walsh his buyer did not want to go to Miami to pick up the cocaine. Walsh said, "[L]et me uh go call my guy and uh, see if my guy will bring them over here." Walsh then left Cox, drove to the Lemon Tree pay phone, and called Mattos's home.

On April 14, Cox paged Walsh. Walsh called back and said he would be talking with his "office" at 10:00 a.m. At 10:09 Walsh called a pay phone in Miami near Mattos's home. Walsh then went to

Cox's place of business and said that "his guy" had to go back to Bogata. Walsh went back to the pay phone across the street and called Mattos's home. Walsh returned to Cox and said, "I'm going to page him when I get out ... He's going to try from a Southern bell phone."

Walsh then received a message on his pager to call 595-3265. He went back to the pay phone and called 305-595-3265, a Southern Bell pay phone in Miami near Mattos's phone. Again Walsh returned to Cox. Walsh said that it was, "too late now. He's leaving for uh, fifteen days."

Three days later, Mattos flew from Miami to Colombia. While there, he suffered major stomach problems and had to have emergency stomach surgery. This delayed his return to Miami.

From May 3 (about fifteen days after Mattos left) to June 7, Walsh repeatedly tried to contact Mattos. He called the Mattos home and spoke to someone there on several occasions.[1] He told Cox that his supplier had gotten "hung up down there" and that the deal had to be delayed. At another point Walsh said, "his wife went down." Mattos's wife had flown down to be with him after the surgery.

On June 17, Mattos returned to the U.S. On June 23, Cox called Walsh's pager. Nine minutes later, Walsh called Mattos's home from the Lemon Tree pay phone. Ten minutes later, Walsh

---

[1]Moreover, even though Walsh repeatedly made phone calls using the Western Union company to pay phones near Mattos's home in Miami during the time before and after Mattos's trip to Colombia, Western Union toll records show that Walsh made no calls to those phones during the entire time Mattos was in Colombia.

called Cox and said, "He's back." Walsh explained that the supplier went to a hospital in Colombia because "his insides just busted." Walsh said that the supplier would contact Walsh when he got back to his office.

On June 24, Walsh was paged from Mattos's house. Walsh returned the call from a Winn Dixie pay phone seven minutes later. An hour and a half after that, Walsh called a Miami pay phone near Mattos's home (305-595-3265). Five minutes after that Walsh was paged from 595-3265.

On June 27, Cox told Walsh that he could not go to Miami because of illness. Walsh agreed to go with Cox's "cousin" who was really undercover officer John Barna.

On June 29, Walsh drove to Miami. He went to a pay phone at a Wendy's restaurant and called Mattos's home. Walsh then drove to Mattos's home. Two hours later Walsh went to his hotel. That evening, he met with Barna. Barna said that the buyer (called "Joe") was in Miami and had the money. Walsh said they should complete the deal at "my guy's house." Barna responded that he and Joe were not happy with that plan. Walsh said he'd have to go call his supplier and find out if he would be willing to bring the cocaine to the hotel.

Soon after, Mattos received a call from a pay phone near the hotel. Walsh then left the Hotel and drove to the Wendy's restaurant where he had earlier made a phone call to Walsh. Walsh met in the parking lot with Mattos and another man. After ten minutes in Mattos's car, they drove to a car lot. The three men went in and a short time later, Mattos, Walsh and a woman emerged.

They left in Mattos's car, without the third man.  They drove back to the Wendy's restaurant.  Walsh got out and returned to his hotel.

The next morning, Walsh met with Barna and told him that the supplier "took it back and locked it up" because "he didn't want to leave it in the house."  Walsh said the deal would go down late that night or first thing in the morning.  By the next morning, however, the cocaine was still not available.  Walsh said that this was the only time he had been out of supply, and it was only because of his supplier's hospitalization in Colombia.  Walsh and Barna agreed to complete the deal in Clearwater.

Walsh said he'd try to contact his supplier one more time, and he explained to Barna that he used pay phones because otherwise "you don't know if you're being bugged."  Soon after, a call was made to Mattos's home from a pay phone next door to the motel.  A half hour after that, Walsh called Barna and said that he had tried to contact his supplier but still got no answer.

Walsh and Mattos were indicted for conspiracy to possess cocaine with the intent to distribute, and for attempted possession of cocaine with the intent to distribute.  Both testified at trial. Walsh claimed that Cox, whom he thought was dying of Hodgkin's disease, suggested that they "rip-off" some cocaine buyers to make money for Cox's wife.  Walsh testified that he was just pretending the entire time he was in Miami.  In order to placate a dying man, he was planning to rip-off the cocaine buyer.

Walsh admitted that Mattos was the Colombian that he had been referring to as the supplier, but claimed that Mattos was just the

basis for a "figmentary person" to further the rip-off.  Walsh testified that Mattos knew nothing about this planned rip off.  He said his dealing with Mattos involved legitimate business, and that he used pay phones because the home phone was for his wife.

Mattos also testified that he only had legitimate business contacts with Walsh.  He admitted that "[i]t could be possible" that he and Walsh had both used pay phones near their respective homes to communicate with each other.  To explain why he had communicated with Walsh in this fashion, he testified, "I was not in my house 24 hours a day.  I was not a prisoner."

The jury chose to disbelieve Mattos and Walsh; they convicted Mattos of conspiracy to possess cocaine with the intent to distribute.  The District Court, however, found that the evidence showed "mere association with conspirators" and granted Mattos's renewed motion for judgment of acquittal.

## II. STANDARD OF REVIEW

The District Court's finding that the evidence was insufficient to support the jury's verdict of guilt is reviewable *de novo* and entitled to no deference on appeal.  *United States v. Greer,* 850 F.2d 1447, 1450 (11th Cir.1988).

## III. ANALYSIS

We must consider the evidence in the light most favorable to the jury's verdict, and accept reasonable inferences and credibility choices by the fact-finder.  *United States v. Sanchez,* 722 F.2d 1501, 1505 (11th Cir.1984).  More specifically:

> It is not necessary that the evidence exclude every reasonable hypothysis of innocence or be wholly inconsistent with every conclusion except that of guilt, provided that a reasonable trier of fact could find that the evidence established guilt

beyond a reasonable doubt.  A jury is free to choose among reasonable constructions of the evidence.

*Id., quoting United States v. Bell,* 678 F.2d 547, 549 (5th Cir. Unit B June 1982) (en banc), *aff'd on other grounds,* 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983).

The jury in this case chose to disbelieve Mattos and Walsh. That choice was reasonable because:  1) if Walsh merely planned to rip-off the buyer, there was no need to hold up the deal when Mattos was in Colombia;  2) if Walsh wanted to rip-off the buyer, there was no reason not to do just that when the buyer was in Miami;  3) if Walsh was scheming with Cox to rip-off the buyer, there was no reason to hide this from Cox's "cousin," John Barna; 4) if Walsh was not planning on ripping-off the buyer then he needed to have a cocaine supplier, and he admitted at trial that Mattos was the man who he referred to as his supplier;  5) on virtually every occasion that Walsh discussed the deal with Cox or Barna, he contacted Mattos's home or a nearby pay phone right before or immediately after the discussion;  6) in many of the taped conversations between Walsh and Cox or Walsh and Barna, Walsh confirmed that he had just spoken with, or was about to speak to, his supplier;  7) Walsh and Mattos took great pains to speak on pay phones instead of using their home phones;  8) Walsh said they did so to avoid being bugged;  and 9) the explanations that Walsh and Mattos gave at trial for consistently using pay phones were at best far-fetched.

## IV. CONCLUSION

Because the evidence in this case is sufficient to support the jury verdict, we REVERSE and REMAND with instructions to reinstate

the jury's verdict.