[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 16, 2010
JOHN LEY
CLERK

No. 09-13480
Non-Argument Calendar

_____

D. C. Docket No. 08-21077-CR-JIC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RICARDO ANTONIO SANCHEZ-LINO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 16, 2010)

Before BARKETT, HULL and KRAVITCH, Circuit Judges.

PER CURIAM:

Ricardo Antonio Sanchez-Lino appeals from his convictions and 97-month

sentences for importing and possessing cocaine with the intent to distribute. After

a thorough review of the record, we affirm.

## I. Background

In 2008, a federal grand jury indicted Sanchez-Lino for "knowingly and intentionally" importing a controlled substance into the United States, in violation of 21 U.S.C. § 952(a), and "knowingly and intentionally" possessing 500 grams or more of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Sanchez-Lino's defense at trial was that his employer tricked him into bringing drugs into the United States.

The following facts are relevant to the issues on appeal. At trial, the government first presented the testimony of Customs and Border Protection Officer Rosemond Raymore, who testified that on November 18, 2008, she brought Sanchez-Lino to a inspection area in the Miami airport to interview him and examine his bags. Raymore testified that Sanchez-Lino stated that he had travelled to Miami for a vacation, that his cousin had paid for his plane ticket, and that nobody had given him anything to bring with him. After searching his bag, Officer Raymore found multiple packages of unusually heavy tea sticks and noticed a strong odor of ammonia or bleach. Based on these facts, she probed one of the tea sticks, and discovered cocaine inside. Investigators found 3.893 kilograms of cocaine inside the tea sticks.

The government next called Victor Lopez, an agent in a narcotics group of U.S. Immigration and Customs Enforcement (ICE), who testified that he also had interviewed Sanchez-Lino on November 18. He testified that Sanchez-Lino told him that he was traveling for a business that imported clothes and tea sticks into the United States. Lopez also testified that Sanchez-Lino admitted that initially he was suspicious of his prior business trips to the United States because he would hand over his bags to a black man named Martinez "who kind of looked like a drug dealer." On cross examination, Lopez admitted that he failed to report Sanchez-Lino's suspicions to his supervisors and only mentioned it to the prosecutors shortly before trial. On redirect, the government asked Lopez if Sanchez-Lino's attorneys had requested Sanchez-Lino's full statement. Sanchez-Lino objected on the ground that the question was burden-shifting. The court sustained the objection, and instructed the jury to disregard the question.

The government then called Senior Special Agent Marco Suarez, who stated that he had 12 years of undercover and narcotics experience and knew the street value of narcotics. Suarez testified that couriers generally had to know that they were carrying drugs because they were responsible for very expensive products.

Sanchez-Lino testified to the following: In April 2007, when he was living in Lima, Peru, he saw a classified ad in a newspaper seeking people with United

States visas. He had received a tourist visa in 1994, which his wife renewed for him in 2004. Sanchez-Lino responded to the ad and went to the company's office for an interview. The interviewer told Sanchez-Lino that his job would be to take two suitcases packed with natural products and textiles to the United States and bring two suitcases back to Lima. The pay was $200 per round trip, which was higher than his weekly income of $140 as a taxi driver. Shortly after, his new employers presented Sanchez-Lino with a contract, which Sanchez-Lino admitted into evidence without objection.

Before Sanchez-Lino's first flight in May 2007, he was called to the office to review the contents of the suitcase. The items, which were not yet packed, included clothes, candy, and tea sticks.[1] Sanchez-Lino flew to New York that evening. The trip lasted five days, during which all of his expenses were paid. Sanchez-Lino then returned to Peru with two suitcases filled with new clothing. Thereafter, he made repeated similar trips to New York.

His trip to Miami on November 18, 2008, however, was different because his employers did not give him a contract and gave him a raise to $250. When Sanchez-Lino received the suitcases, he emptied the contents and inspected them with his wife. He did not see any cocaine in the tea sticks and was not told he

---

[1] Technically, the tea sticks were *una de gato*, or "cats claw," which Sanchez-Lino testified was used as alternative medicine.

would be transporting cocaine. He repacked the tea sticks in the bottom of the suitcase, under the clothes. He was shocked when cocaine was found in the tea sticks and claimed that he had been tricked into bringing the drugs into the United States.

On cross-examination, Sanchez-Lino admitted that when he went on his previous trips to New York, he had given false addresses on his customs forms. He explained that he "didn't think it was important what I told the airline." He admitted that he swore to tell the truth on these forms, but nonetheless lied about having commercial merchandise because he did not think that it was important. Sanchez-Lino also admitted that he lied multiple times to Officer Raymore, and was willing to lie to a federal officer in order to complete his job. He admitted that once cocaine was found, he had changed his story. He explained that if he had known his visa allowed him to come for business, he would have answered truthfully. Finally, the government asked him whether he had a company representative to verify the authenticity of the contracts he introduced. Sanchez-Lino objected because this question impermissibly shifted the burden to the defense. The court overruled this objection, however, stating that Sanchez-Lino had placed the authenticity of the contracts at issue when he introduced them.

The government then recalled Officer Raymore as a rebuttal witness. It

asked her about Sanchez-Lino's reaction upon finding out about cocaine, and Sanchez-Lino objected that it was a comment on his silence. The judge overruled the objection on the ground that Sanchez-Lino's reaction was "highly relevant." Thereafter, Officer Raymore testified that she observed Sanchez-Lino after he learned that there was cocaine in the sticks, and discerned no emotional reaction.

The government finally called Special Agent Francisco Meneses as a rebuttal witness, who testified that he had 17 years' experience investigating document fraud and was familiar with the visa-application process. Meneses explained that Sanchez-Lino's visa could be used for either business or pleasure. To receive his type of visa, an applicant must state that they were coming "to conduct business or pleasure or some combination of both." He also testified that generally an applicant for this type of visa must apply in person both initially and when renewed.

At the close of the evidence, the district court instructed the jury. The court rejected Sanchez-Lino's proposed language, drawn from the Eleventh Circuit Pattern Jury Instructions, which would have required the government to prove he had acted "knowingly and willfully" on both counts.[2] Instead, the district court

---

[2] Although 21 U.S.C. § 841(a) requires unlawful acts to be performed "knowingly or intentionally" and 21 U.S.C. § 952(a) requires no specific language on intent, the Eleventh Circuit Pattern Jury Instructions for these offenses include a willfulness requirement. *See* 11th Cir. Pattern Jury Instructions 85, 90 (2003).

charged the jury that the government had to prove that Sanchez-Lino had acted "knowingly and intentionally," explaining that this instruction mirrored the language in the statutes and indictment. The district court also rejected Sanchez-Lino's argument that the jury instructions define "intentionally."

The jury convicted Sanchez-Lino on both counts. At sentencing, Sanchez-Lino argued that he qualified for a safety-valve reduction for giving full and complete information to the government.[3] In support, he presented an investigative report in which another person was caught transporting tea sticks filled with cocaine for Sanchez-Lino's employer. The district court denied his request for a safety-valve reduction. In sentencing Sanchez-Lino, the district court acknowledged that it had considered the statements of all parties, the PSI, and the § 3553(a) factors, and noted that the evidence—particularly the way Sanchez-Lino packed the suitcases—compelled the conclusion that he had full knowledge that he was transporting contraband. Because Sanchez-Lino "knew what he was bringing in," the court concluded that there was no rational basis for departing from the guideline range of 97 to 121 months' imprisonment. The court thus sentenced Sanchez-Lino to 97 months' imprisonment on both counts, to run concurrently.

---

[3] He argued that the jury verdict did not foreclose a finding that he was innocent and had therefore given full and complete information to the government.

## II. Discussion

*1. Sufficiency of the evidence*

Sanchez-Lino argues that the government failed to produce sufficient evidence to prove that he had knowledge of the cocaine in his luggage. In reviewing the sufficiency of the evidence, we will not disturb a guilty verdict unless "no trier of fact could have found guilt beyond a reasonable doubt." *United States v. Yost*, 479 F.3d 815, 818-19 (11th Cir. 2007) (quotation omitted). Furthermore, we view "the evidence in the light most favorable to the jury's verdict, and accept reasonable inferences and credibility choices by the fact-finder." *United States v. Mattos*, 74 F.3d 1197, 1199 (11th Cir. 1996).

To secure convictions for violations of §§ 952(a) and 841(a), the government must prove that the defendant had knowledge of a controlled substance in his possession. *See United States v.* Mercer, 541 F.3d 1070, 1076 (11 Cir. 2008); *United States v. Lewis*, 676 F.2d 508, 512 (11th Cir. 1982). "Direct evidence of knowledge, however, is not necessary to sustain [the defendant's] conviction; the government may prove its case through circumstantial evidence." *United States v. Quilca-Carpio*, 118 F.3d 719, 721 (11th Cir. 1997).

The government produced sufficient circumstantial evidence to support Sanchez-Lino's convictions. A jury could reasonably conclude that Sanchez-Lino

8

would not be carrying almost four kilograms of cocaine without knowing it. *See Quilca-Carpio*, 118 F.3d at 720-22. Similarly, the jury could infer Sanchez-Lino's knowledge from the evidence that he had made six previous trips to New York, each time carrying suitcases packed with tea sticks. Finally, the jury was entitled to discredit Sanchez-Lino's testimony that he was tricked into bringing drugs into the United States and believe the opposite. *See United States v. Brown*, 53 F.3d 312, 314 (11th Cir. 1995). This is particularly true given Sanchez-Lino's admission that he made numerous misstatements to investigators and changed his story when the cocaine was discovered. Thus, we conclude that the evidence was sufficient to support Sanchez-Lino's convictions.

*2. Sixth Amendment right to a fair trial*

Sanchez-Lino argues that several of the district court's evidentiary rulings violated his Sixth Amendment right to a fair trial. We review evidentiary rulings for abuse of discretion. *United States v. Gari*, 572 F.3d 1352, 1361 (11th Cir. 2009). We review for plain error, however, if the defendant did not object to the admission of the evidence in the district court. *United States v. Jernigan*, 341 F.3d 1273, 1289 (11th Cir. 2003). Under plain error review, this Court may only reverse if: (1) there was error (2) that was plain, (3) affected the defendant's substantial rights, and (4) "seriously affected the fairness of the judicial

9

proceedings." *Id*.

First, Sanchez-Lino argues for the first time on appeal that the district court improperly admitted the opinion testimony of three government witnesses. He contends that Raymore's testimony about the smell of cocaine and the weight of the tea sticks lacked a factual foundation. Next, he asserts that Suarez's testimony that a drug courier would "have to" know that he is carrying drugs was inadmissible because, as a lay opinion, it was not based on personal knowledge, and as an expert opinion, it impermissibly commented on the defendant's mental state. He also argues that Meneses's testimony about the visa-application process was unfounded because Meneses lacked personal knowledge.

Because Sanchez-Lino raises these challenges for the first time on appeal, we review for plain error. The district court did not plainly err by admitting Raymore's testimony because her testimony was based on first-hand knowledge of the weight and odor of Sanchez-Lino's bag. *Cf. United States v. Myers*, 972 F.2d 1566, 1577 (11th Cir. 1992) (affirming admission of lay testimony that burn marks on victim's back were caused by a stun gun where such a conclusion was rationally based on the witness's personal perception of the victim's back and experience as police officer). Furthermore, the district court did not plainly err by admitting Suarez's testimony because his testimony was based on his knowledge of narcotics

trafficking. *See United States v. Garcia*, 447 F.3d 1327, 1335 (11th Cir. 2006) ("[A]n experienced narcotics agent may testify as an expert to help a jury understand the significance of certain conduct or methods of operation unique to the drug distribution business."). Similarly, the district court did not plainly err by admitting Meneses's testimony about the visa-application process because he had specialized knowledge of this process from his 12-year experience as a criminal investigator with ICE and its predecessor agency. *See* Fed. R. Evid. 702.

Second, Sanchez-Lino argues that the district court improperly allowed the government to shift the burden of proof when the government asked Sanchez-Lino whether he could verify the contracts specifying his agreement to transport tea sticks. The district court did not err because Sanchez-Lino placed the authenticity of these contracts at issue when he testified and therefore the government was entitled to test the plausibility of this account. *See United States v. Demarest*, 570 F.3d 1232, 1242 (11th Cir. 2009) (holding that the government is entitled to test the plausibility of the defendant's account on cross-examination). Sanchez-Lino also argues that the district court improperly allowed the government to shift the burden of proof when it asked Lopez whether Sanchez-Lino's attorneys had sought to obtain his post-arrest statement detailing his suspicions of Martinez. The district court did not err because it sustained Sanchez-Lino's objection to this

11

question and ordered the jury to disregard it.  *See United States v. Simon*, 964 F.2d 1082, 1087 (11th Cir. 1992) ("A curative instruction purges the taint of a prejudicial remark because a jury is presumed to follow jury instructions.").

Third, Sanchez-Lino argues that the district court abused its discretion by allowing the government to comment on Sanchez-Lino's silence when Raymore testified that Sanchez-Lino had shown no "emotional reaction" after she told him that there was cocaine in his bags.  The district court did not err because Raymore's testimony was appropriate for rebutting Sanchez-Lino's own testimony that he was "shocked" to learn that there was cocaine in the tea sticks.  *See United States v. Frazier*, 387 F.3d 1244, 1269 (11th Cir. 2004) (holding that the purpose of rebuttal evidence is to "explain, repel, counteract, or disprove the evidence of the adverse party").

*3. Jury instructions*

Sanchez-Lino argues that the district court erroneously required the government to prove that Sanchez-Lino acted "knowing and intentionally" rather than "knowingly and willfully" as set forth in the Eleventh Circuit Pattern Jury Instructions.  He also argues that the district court erroneously failed to provide a definition of "intentionally" in the jury instructions.  *See United States v. Zapata*, 497 F.2d 95 (5th Cir. 1974) (holding that 21 U.S.C. 952(a) is a specific intent

12

statute.).[4]  "We apply a deferential standard of review to a trial court's jury

instructions.  Under this standard, we will only reverse if we are left with a

substantial and [in]eradicable doubt as to whether the jury was properly guided in

its deliberations."  *United States v. Puche*, 350 F.3d 1137, 1148 (11th Cir. 2003)

(quotation marks omitted).

The district court did not err.  The instruction given tracked the language of

the indictment and 21 U.S.C. § 841(a).  *See* 21 U.S.C. § 841(a); *United States v.

Polar*, 369 F.3d 1248, 1252 (11th Cir. 2004) (holding that statutory language

trumps the language of pattern jury instructions).  Furthermore, 21 U.S.C. § 952(a)

does not explicitly require willfulness.  Thus, there is no substantial or ineradicable

doubt that the jury was misled.  In addition, no independent definition of

"intentionally" was necessary because the court defined the word "knowingly" to

mean "that the act was done voluntarily and intentionally and not because of

mistake or accident."

Finally, Sanchez-Lino argues that the cumulative effect of these errors

amounted to a violation of his Sixth Amendment right to a fair trial.  *See United

States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005).  This argument fails,

---

[4] In *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), this court adopted as binding precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

however, because the district court's rulings were not erroneous.  *United States v. Waldon*, 363 F.3d 1103, 1110 (11th Cir. 2004) (where there is no error or only a single error there can be no cumulative error).

*4. Safety-valve reduction and procedural reasonableness of sentence*

Sanchez-Lino argues that the district court failed to make an independent assessment of his compliance with the statutory requirements of the safety-valve provision in the Sentencing Guidelines.  *See* U.S.S.G. § 5C1.2.  This provision allows a court to impose a sentence without regard to any statutory minimum sentence if the defendant satisfies the five criteria set for in 18 U.S.C. § 3553(f)(1)-(5).[5]  Sanchez-Lino contends that the district court improperly relied on the jury's verdict in finding that he had not complied with this provision's "tell-all" provision, requiring him to "truthfully provide[] to the [g]overnment all information and evidence [he had] concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan."  18 U.S.C. § 3553(f)(5).

When reviewing the denial of a safety-valve reduction, we review the district court's legal conclusions *de novo* and its factual findings for clear error.  *United States v. Johnson*, 375 F.3d 1300, 1301 (11th Cir. 2004).  There is nothing in the

_____

[5] If the defendant meets the safety-valve criteria set forth in U.S.S.G. § 5C1.2, then his offense level is decreased by two.  U.S.S.G. § 2D1.1(b)(11).

14

record suggesting that the district court failed to make an independent assessment of Sanchez-Lino's truthfulness. Furthermore, there is more than enough evidence in the record to support the finding that Sanchez-Lino was not truthful; therefore, the district court committed no clear error.

Sanchez-Lino also argues that his 97-month sentence was procedurally unreasonable because the district court impermissibly applied the guidelines as presumptively reasonable and failed to consider the § 3553(a) factors. In this case, the district court expressly acknowledged that the guidelines were not presumptively reasonable and described its reasons for sentencing Sanchez-Lino at the low end of the guideline range. Furthermore, a district court is not required to explicitly mention each of the § 3553(a) factors, *United States v. Scott*, 426 F.3d 1324, 1329 (11th Cir. 2005), and need only "set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *Rita v. United States*, 551 U.S. 338, 356 (2007). Here, the district court explained that its decision was based on the way that the suitcases were packed and Sanchez-Lino's repeated trips to the United States.

Accordingly, we **AFFIRM** the judgment of the district court.

15